RAMÓN R. DELGADO RODRÍGUEZ, demandante y recurrido, *v.* SILA NAZARIO DE FERRER y OTROS, demandados y peticionaria la primera.

*Número:* CE-86-417 *Resuelto:* 16 de mayo de 1988

348

*Rafael Ortiz Carrión, Procurador General,* y *Carmen A. Bravo Riefkohl, Procuradora General Auxiliar,* abogados de la peticionaria; *Diego Ledée Bazán,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Ramón Delgado Rodríguez comenzó a trabajar en el Departamento de Servicios contra la Adicción (D.S.C.A.) en el 1975 en calidad de Especialista de Conducta Humana I, mediante nombramiento provisional. Su contrato era renovado anualmente. A partir de 1977 ocupó la plaza de Especialista de Conducta Humana II.

*El 19 de marzo de 1981, la Secretaria del Departamento de Servicios contra la Adicción, Sila Nazario de Ferrer, le notificó mediante carta que debido a la difícil situación presupuestaria por la que atravesaba la agencia, prescindiría de sus servicios efectivo el 15 de abril.*

Con fecha de 13 de abril de 1981, Delgado Rodríguez presentó una apelación ante la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.). Adujo básicamente que era un empleado de carrera con *status* transitorio y que su cesantía era contraria a las Constituciones de Puerto Rico y de Estados Unidos, a la Ley de Personal del Servicio Público de Puerto Rico y al Reglamento de D.S.C.A. Más tarde, el 1ro de mayo, mediante enmienda, alegó discrimen por razón de ideas políticas.[1] Luego de varios trámites, de conformidad con nuestro mandato en *Delgado v. D.S.C.A.*, 114 D.P.R. 177 (1983), J.A.S.A.P. asumió jurisdicción y, el 7 de marzo de 1984, ordenó su restitución y el pago de los salarios dejados de percibir hasta su reinstalación.

---

[1] Las nuevas alegaciones, según dicho escrito suscribían:

"(a) Durante el tiempo que el apelante trabajó para el D.S.C.A. se discriminó contra él por sus ideas políticas, lo que ocasionó que se cometieran abusos contra su persona, fuera tratado de forma inferior a otros empleados y, finalmente, despedido por esa razón.

"(b) Lo expuesto en el inciso anterior es contrario a la Primera Enmienda de la Constitución de los Estados Unidos, al Artículo 2 de la Constitución del Estado Libre Asociado de Puerto Rico y al Artículo 2 de la Ley de Personal." (Énfasis suplido.)

El 1 de marzo de 1985, Delgado Rodríguez presentó una demanda por daños y perjuicios ante el Tribunal Superior, Sala de San Juan, contra la entonces Secretaria del D.S.C.A., Sila Nazario de Ferrer, su sucesor, José R. Cordero y otras personas, cuyos nombres se desconocen. Todos en su carácter personal. Reclamó $50,000 por alegadas "angustias y tormentos, al verse destituido sin justa causa, privados de ingresos él y su familia, expuestos al escarnio público, afectado su crédito [y] atrasadas sus cuentas". *Exhibit* I, pág. 2.

La demandada Nazario de Ferrer solicitó la desestimación por prescripción. Sostuvo que dicho período comenzó a correr el 19 de marzo de 1981 —fecha en que Delgado Rodríguez fue notificado de su separación— y, por ende, la demanda que presentó el 1ro de marzo de 1985 era tardía. En oposición, Delgado Rodríguez adujo que su causa de acción no se "concretizó" hasta el 7 de marzo de 1984, cuando J.A.S.A.P. resolvió y ordenó su reinstalación. El tribunal se negó a desestimar. Acordamos revisar.

## I

La procedencia o no de la defensa de prescripción en el contexto en que se producen los hechos exige, a título de repaso, una mención somera de las doctrinas de jurisdicción primaria y el agotamiento de remedios administrativos. Después de todo, ambas tienen como fin común coordinar y armonizar la labor adjudicativa de los foros administrativos y los judiciales. "[E]stán dirigidas a promover una relación propia y armónica entre los tribunales y las agencias encargadas de administrar particulares disposiciones regulativas." *Febres v. Feijoó*, 106 D.P.R. 676, 683 (1978). Están tan íntimamente relacionadas que en ocasiones las hemos denominado indistintamente. *Febres v. Feijoó*, supra, pág. 682 n. 4. Sin embargo, en rigor científico, es preciso reconocer sus características diferenciadoras.

■ En su origen, la doctrina de *jurisdicción primaria* —de génesis jurisprudencial—([2]) fue concebida para guiar a los tribunales a determinar si deben intervenir inicialmente en cierta controversia o si le permiten a la agencia concernida resolverla según las funciones y prerrogativas contenidas en su ley orgánica. Entra en juego cuando existe jurisdicción concurrente. Versa sobre "prioridad de jurisdicción". *E.L.A. v. 12,974.78 Metros Cuadrados*, 90 D.P.R. 506, 511 (1964); *First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 426, 433 (1983); *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398, 402 (1980). A su amparo, el foro judicial se abstiene para permitir al organismo enjuiciar una materia de su competencia, bajo el supuesto de que éste posee unas destrezas y conocimientos especializados (*expertise*).

■ La necesidad de una coordinación efectiva se agudiza cuando la regulación en determinada área es más abarcadora e incisiva. La relación es directamente proporcional. A mayor regulación, mayores las probabilidades de conflicto. En este punto la doctrina destaca sus virtudes. Permitirle a cada agencia resolver inicialmente las controversias a base de su conocimiento especializado promueve no sólo la uniformidad adjudicativa, sino que reduce considerablemente las posibilidades de conflicto. Si el Poder Judicial entrara festinadamente a examinar cuestiones de política pública —no resueltas a nivel administrativo— careceríamos del beneficio de esas interpretaciones y se incrementarían las probabilidades de decisiones incompatibles.

■ En contraste, la doctrina de *agotamiento de remedios administrativos* es de conveniencia práctica. Su objetivo es "determina[r] la etapa en la cual el litigante puede

---

([2]) *Texas & Pac. Ry. v. Abilene Cotton Oil Co.*, 204 U.S. 426 (1907), comenzó su desarrollo doctrinario. Véase B. Schwartz, *Administrative Law*, 2da ed., Boston, Little, Brown & Co., 1984, Sec. 8.24, pág. 487.

recurrir a los tribunales". *E.L.A. v. 12,974.78 Metros Cuadrados*, supra, pág. 513. De ese modo se evita una intervención judicial innecesaria y a destiempo que tiende a interferir el cauce y desenlace normal del proceso administrativo.

█ Salvo las excepciones reconocidas,(³) nadie puede invocar un remedio judicial contra una actuación gerencial hasta haber finalizado los procedimientos. En ocasiones, ello no sólo evitará la intervención judicial, sino que la propia agencia rectificará sus errores en etapas avanzadas del proceso. Cualquier intervención judicial prematura e infundada puede trastocar ese proceso. "El balance de poderes que debe existir entre agencias y tribunales, y la necesidad y conveniencia de tener un récord administrativo completo, aconsejan que se culminen los procesos administrativos antes del examen judicial." *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 723 (1982).

█ A distinción de la doctrina de jurisdicción primaria, bajo la de agotamiento el tribunal *no tendrá jurisdicción* hasta que se agoten los remedios administrativos. Se logra así virtualidad al principio de autonomía administrativa y, a su vez, se satisface una sana norma de administración adjudicativa, esto es, canalizar la solución de controversias a través de los mecanismos más rápidos y económicos antes de intervenir el auxilio judicial. B. Schwartz, *Administrative Law*, 2da ed., Boston, Little, Brown & Co., pág. 503.

---

(³) En términos esquemáticos cuando: (1) lo presentado es una cuestión de derecho que no requiere el ejercicio de discreción administrativa; (2) hay violación a los derechos civiles; (3) el remedio administrativo es inútil e inadecuado; (4) existe peligro de daño inminente, y (5) es clara la falta de jurisdicción. *First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 426, 437–439 (1983); *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 723 (1982); *Pedraza Rivera v. Collazo Collazo*, 108 D.P.R. 272 (1979); *Pierson Muller I v. Feijoó*, 106 D.P.R. 838, 850–851 (1978); *Febres v. Feijoó*, 106 D.P.R. 676, 681 (1978); *Otero Martínez v. Gobernador*, 106 D.P.R. 552, 556 (1977).

## II

Con esta breve referencia doctrinaria, notamos que la jurisdicción de J.A.S.A.P. corresponde propiamente a la de un organismo cuasi judicial "enteramente independiente de la Oficina Central de Administración de Personal". Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1381). Como tal, su jurisdicción apelativa es amplia, 3 L.P.R.A. sec. 1394, y se extiende a las acciones interpuestas por empleados relacionadas con las áreas esenciales al principio de mérito,[4] las cuales "serán vistas en primera instancia". Bajo este mandato legislativo, en *Otero Martínez v. Gobernador*, 106 D.P.R. 552 (1977), resolvimos que J.A.S.A.P. tenía *jurisdicción primaria* para ventilar casos de reclasificaciones indebidas, y advertimos que era menester acudir a ella antes que al tribunal. En igual sintonía, *Febres v. Feijoó*, supra, pág. 681, y *Pierson Muller I v. Feijoó*, 106 D.P.R. 838, 853 (1978). Esas decisiones simplemente refrendan el esquema legislativo de la Ley de Personal del Servicio Público de Puerto Rico de que J.A.S.A.P. posee el conocimiento especializado en materia de personal. Le corresponde, pues, como *regla general*, examinar y adjudicar inicialmente los asuntos planteádoles relativos al principio de mérito. *Díaz Marín v. Mun. de San Juan*, 117 D.P.R. 334 (1986).

Ahora bien, *como excepción*, hemos reconocido que cuando se trata de una violación de derechos civiles — que reclama pronta reivindicación— no es necesario ir ante

---

[4] Estas áreas esenciales al principio de mérito son: (1) clasificación de puestos; (2) reclutamiento y selección; (3) ascensos, traslados y descensos; (4) adiestramiento, y (5) retención.

"El sistema de mérito es un sistema integral que cubre tanto el despido del empleado como su ingreso." *Guerra v. Srio. de Servicios Sociales*, 113 D.P.R. 50, 53 (1982), y *Clemente v. Depto. de la Vivienda*, 114 D.P.R. 763, 769 (1983).

dicho foro administrativo. *Pedraza Rivera v. Collazo Collazo*, 108 D.P.R. 272 (1979); *Pierson Muller I v. Feijoó*, supra, págs. 850–851; *Otero Martínez v. Gobernador*, supra, pág. 556.(5) Así, bajo la Ley Núm. 12 de 8 de agosto de 1974 —que enmendó nuestro estatuto anti-*injunction*— 32 L.P.R.A. sec. 3524, permite una orden de entredicho provisional, *injunction*, preliminar o permanente, ante alegaciones que de su faz sustancien que, so color de autoridad, se ha privado al actor de un derecho garantizado por la Constitución y las leyes de Puerto Rico o de Estados Unidos. "[E]l remedio que la misma provee es *independiente* y *suplementario* a cualquier otro disponible a la parte agraviada." *Pedraza Rivera v. Collazo Collazo*, supra, pág. 276. La medida (*test*) implica detectar "si la acción envuelve o no un *agravio de patente intensidad* al derecho del individuo que reclame urgente reparación". *First Fed. Savs. v. Asoc. de Condómines*, supra, pág. 438. El tribunal deberá balancear los intereses involucrados y convencerse de que efectivamente existe una posibilidad real de prevalecer. *Santiago v. Superintendente de la Policía*, 112 D.P.R. 205, 209 (1982). El recurso de *injunction* no está disponible para casos en que el derecho reclamado "no reviste ni la urgencia ni la intensidad que ameriten eludir el ordenado cauce administrativo". *Otero Martínez v. Gobernador*, supra, pág. 556.

### III

Delgado Rodríguez sostiene que si "presentaba su demanda antes de la resolución final de la JASAP, una defensa válida que podían esgrimir los demandados-peticionarios era

---

(5) En el ámbito federal, el caso normativo es *McKart v. United States*, 395 U.S. 185 (1969). De época más reciente, véanse: *Britt v. Simi Valley Unified School Dist.*, 696 F.2d 644 (9no Cir. 1983); *Katris v. City of Waukegan*, 498 F. Supp. 48 (Ill. D.C. 1980); *County of Contra Costa v. State*, 222 Cal. Rptr. 750 (Cal. App. 1986).

que la acción era prematura debido a que el accionar de éstos, como un asunto especializado de administración de personal, estaba sujeto, al escrutinio de esa agencia. Es decir, argumentarían ellos, hay que esperar porque si JASAP o cualquier foro apelativo brinda su aval al procedimiento de separación del empleado, éste se quedaría huérfano de causa de acción". Alegato del demandante recurrido, pág. 2. El argumento no nos persuade.

 Aquí, desde temprana etapa, el cuadro fáctico justificaba el desvío del cauce administrativo.[6] Primero, Delgado Rodríguez llevaba siete (7) años trabajando en el D.S.C.A. al momento de su cesantía. Entre los empleados que ocupaban igual plaza, era el de mayor antigüedad. Hasta ese momento sus ejecutorias eran satisfactorias. Segundo, sus superiores conocían que pertenecía al Partido Socialista Puertorriqueño (P.S.P.). Y tercero, al prescindirse de sus servicios por alegadas razones económicas, la autoridad nominadora no siguió los procedimientos establecidos en la Sec. 4.6 de la Ley de Personal del Servicio Público de Puerto Rico. 3 L.P.R.A. sec. 1336(6). En estas circunstancias no era aplicable la norma sobre agotamiento de la acción administrativa. Después de todo, la misma es "una [norma] de conveniencia compatible con la justicia, *y no posee inflexibilidad tal que lleve a la frustración de un derecho o a la negación de un remedio*". (Énfasis suplido.) *González Saldaña v. Tribunal Superior,* 92 D.P.R. 477, 487 (1965). "Esa latitud y variedad remedial debe ser reconocida especialmente cuando el estatuto, como en el presente caso, no inviste con carácter de *exclusivo* el método legislado para someter la actuación administrativa al escrutinio judicial. *Cf. Asoc. de*

---

[6] En *Pedraza Rivera v. Collazo Collazo,* supra, pág. 276, dejamos ver que en casos de rebaja de sueldo y cesantías —que involucran un impacto económico inmediato— podemos prescindir de la aplicación de las normas de jurisdicción primaria y agotamiento de remedios administrativos.

*Distribuidores v. Admón. Estabilización,* 81 D.P.R. 212, 220 (1959)." (Énfasis del original.) *Febres v. Feijoó,* supra, pág. 682.

■ Resolvemos que Delgado Rodríguez, para fines de interrumpir el término prescriptivo, pudo haber reclamado en el foro judicial y prescindir de acudir en primera instancia a J.A.S.A.P. o, en la alternativa, interrumpirlo mediante comunicación escrita extrajudicial.(7)

■ El carácter del agravio así lo justificaba. "La reivindicación de los derechos constitucionales corresponde y puede reclamarse en primera instancia en los tribunales de justicia, sin que tenga jurisdicción original sobre ello el foro administrativo." *Santiago v. Superintendente de la Policía,* supra, pág. 207.

## IV

Ante esta conclusión, para superar la defensa de prescripción, Delgado Rodríguez elabora la teoría de que su separación hay que mirarla como un proceso "que comienza con la carta de separación y no como un solo acto". Alegato, *supra,* pág. 1. Aduce que a partir de esa fecha inició su peregrinaje de impugnación administrativa y judicial ante J.A.S.A.P., el Tribunal Superior y este Foro. Una vez devolvimos su caso a J.A.S.A.P., no fue hasta *el 7 de marzo de 1984* que ésta concluyó que su separación fue ilegal porque el Estado no cumplió con la Ley de Personal del Servicio Público

---

(7) En instancias en que un litigante acuda simultáneamente al foro judicial y administrativo, o que las doctrinas sobre jurisdicción primaria o de agotamiento de remedios administrativos aconsejen o hagan imperativo remitir el caso a la agencia administrativa correspondiente —y además se reclamen daños y perjuicios— la mejor práctica es suspender la acción judicial para que, una vez advenga final y firme el dictamen administrativo, se resuelva si proceden los daños reclamados.

de Puerto Rico. La acción ilegal no se materializó hasta ese momento. No podemos refrendar su imaginativa tesis.

 El Art. 1868 del Código Civil, en lo controlante, dispone que prescriben por el transcurso de un (1) año las acciones para exigir la responsabilidad civil por culpa o negligencia *"desde que lo supo el agraviado"*. (Énfasis suplido.) 31 L.P.R.A. sec. 5298.

 Nuestra casuística reconoce que la determinación del momento exacto en que se conoce o debió razonablemente conocerse el daño, "constituye un delicado problema de prueba e interpretación". *Rivera Encarnación v. E.L.A.*, 113 D.P.R. 383, 385 (1982). L. Díez-Picazo, *La Prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, pág. 240; J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1979, T. 1, Vol. I, 2da parte, pág. 894. "La dificultad reside en la variedad de circunstancias en que se da el problema del conocimiento del daño. Hechos distintos requieren soluciones diversas." *Rivera Encarnación v. E.L.A.*, supra, pág. 386.

 En su obra, el Prof. Herminio M. Brau Del Toro compendia así esta visión doctrinal:

En cuanto al conocimiento de que se ha sufrido daño, hemos señalado que por necesidad deberán existir algunas manifestaciones exteriores o físicas que lleven al perjudicado a reconocerlas y a darse cuenta de que ha sufrido una consecuencia lesiva, la que al momento de ser conocida se convierte en un daño, aunque en ese momento no se pueda valorizar toda su magnitud y extensión. No es necesario que se conozcan [e]stas circunstancias para que pueda imputarse que se ha obtenido conocimiento de la consecuencia dañosa, ya que su extensión, su magnitud y su valorización pueden ser establecidas en un momento posterior durante la ventilación de la acción resarcitoria.

. . . . . . . .

*Cuando se tiene conocimiento de estas consecuencias le-sivas, se tiene conocimiento del daño y nace una causa de acción para el perjudicado. En ese momento comienza a con-tar el término de prescripción para el ejercicio de la corres-pondiente acción resarcitoria. Hemos señalado antes que el perjudicado no está impedido de interponer la misma porque no pueda apreciarse en ese momento toda la extensión, la magnitud y, en suma, la valorización del daño en cuestión.* Eso puede hacerse en etapas posteriores del proceso jurídico en que ·oportunamente se reclame indemnización. (Citas omi-tidas y énfasis suplido.) H.M. Brau Del Toro, *Los daños y per-juicios extracontractuales en Puerto Rico,* 2da ed., San.Juan, Pubs. J.T.S., 1986, págs. 638–640.

 En suma, no es el instante de la producción del daño lo que determina el comienzo del término prescriptivo, sino el momento en que el perjudicado lo conoce. *Colón Prieto v. Géigel,* 115 D.P.R. 232, 243–247 (1984); Díez-Picazo, *op. cit.*; J. Castán Tobeñas, *Derecho Civil español, común y foral,* 12ma ed., Madrid, Ed. Reus, 1978, T. 1, Vol. 2, págs. 966–968; Q.M. Scaevola, *Código Civil,* Madrid, Ed. Reus, 1965, T. XXXII, Vol. 2, págs. 880–881.

 Bajo este prisma, contrario a su contención, la causa de acción de Delgado Rodríguez nació el 19 de marzo de 1981, cuando fue informado de su cesantía. *Cortés v. Valdés,* 43 D.P.R. 192, 194 (1932). Desde ese momento, como agraviado, tuvo conocimiento del daño. Todas sus alega-ciones y reclamos en el foro administrativo y judicial lo de-muestran. Acudió tardíamente al foro judicial. La acción está prescrita y debió ser desestimada.[8]

---

[8] Más allá del ámbito del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, nuestra jurisprudencia también ha establecido que el término prescriptivo aplica-ble a las acciones civiles en daños y perjuicios, que surgen bajo la Ley de Dere-chos Civiles, es de un (1) año. *Olmo v. Young & Rubicam of P.R., Inc.,* 110 D.P.R. 740, 742 (1981).

En *Chardón v. Fernández,* 454 U.S. 6 (1981), el Tribunal Supremo federal determinó que en una acción bajo 42 U.S.C. sec. 1983, por el despido de unos

*Se dictará la correspondiente sentencia.*

La Juez Asociada Señora Naveira de Rodón no intervino.

---

profesores sin permanencia, el término prescriptivo comenzó a transcurrir desde el momento en que se les notificó que quedaban despedidos.

Este enfoque es unánime. Por analogía, a la luz de la naturaleza de las acciones que surgen bajo 42 U.S.C. sec. 1983, la jurisprudencia federal ha utilizado en este tipo de acciones el término prescriptivo aplicable a las acciones en *torts* de los foros locales. *Wilson v. García*, 471 U.S. 261, 268 (1985); *Board of Regents v. Tomanio*, 446 U.S. 478 (1980); *Harris v. Norfolk & W. Ry. Co.*, 616 F.2d 377 (8vo Cir. 1980); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462 (1975); *Graffals González v. García Santiago*, 550 F.2d 687 (1er Cir. 1977); *Sledge v. J.P. Stevens & Co., Inc.*, 585 F.2d 625, 651 (1978). Véanse, también: *Doty v. Sewall*, 784 F.2d 1, 11 (1er Cir. 1986); *Altair Corp. v. Pesquera de Busquets*, 769 F.2d 30, 31 (1er Cir. 1985); *Small v. Inhabitants of City of Belfast*, 617 F. Supp. 1567, 1575 (D.C. Me. 1985); *Ramírez de Arellano v. Alvarez de Choudens*, 575 F.2d 315, 318 (1er Cir. 1978); *Ward v. Caulk*, 650 F. 2d 1144, 1147 (9no Cir. 1981); *Meyer v. Frank*, 550 F.2d 726 (2do Cir. 1977).