Sánchez Martínez, Juez Ponente
*1099 TEXTO COMPLETO DE LA SENTENCIA
Este recurso plantea la controversia de cuál es la fecha de efectividad de la reclasificación de un empleado: si es la fecha de la solicitud particular hecha por escrito por el empleado o es aquella fecha anterior desde que la autoridad nominadora, a sabiendas de que era procedente la reclasificación de dicho empleado, abortó el trámite para su reclasificación por razones puramente presupuestarias. La Junta de Apelaciones del Sistema de Administración de Personal (JASAP) resolvió que es desde la fecha que el empleado solicita por escrito la reclasificación. El recurrente sostiene, por el contrario, que es desde que la propia agencia conoce y comienza la reclasificación. Nosotros, tomando en cuenta las circunstancias particulares del caso, estamos de acuerdo y modificamos la decisión recurrida a tales efectos. Veamos los hechos.
El 21 de julio de 1995 el recurrente Johnny Soto Vázquez presentó un escrito de apelación ante la JASAP en el que alegó que, aun cuando ocupaba un puesto de Químico IV en el Departamento de Salud, las funciones que estaba desempeñando correspondían a las del puesto de Químico V. Acompañó como apéndice de su apelación varios documentos, entre otros: (1) un cuestionario de clasificación completado por el recurrente correspondiente a la nueva clase; (2) dos comunicaciones de 23 de diciembre de 1994 y 23 de enero de 1995 de las que se desprende que el 6 de diciembre de 1994 la oficina de personal sometió a la oficina de presupuesto del mismo Departamento la solicitud de reclasificación del puesto (no se incluyó, sin embargo, copia de la aludida comunicación del 6 de diciembre); y (3) una carta de 23 de mayo de 1995 de las abogadas del empleado recurrente dirigida a la Secretaria del Departamento de Salud requiriéndole la reclasificación del puesto del recurrente. A base de dichos documentos, el 26 de octubre de 1995 la JASAP ordenó sumariamente la reclasificación del recurrente Soto Vázquez de un puesto de Químico IV a un puesto de Químico V, con fecha de efectividad retroactiva al 1ro. de junio de 1995. La JASAP decidió que no habiendo controversia en cuanto a que el Departamento de Salud sabía que procedía la reclasificación, la fecha de efectividad de la misma debía ser la fecha más próxima a aquélla en que el empleado hizo formalmente la solicitud por escrito.
En este recurso de revisión el recurrente Soto Vázquez plantea, no obstante, que la fecha de efectividad de su reclasificación debe ser el 1ro. de diciembre de 1994, porque desde dicho mes el director auxiliar de personal del Departamento de Salud conocía oficialmente que procedía la reclasificación del recurrente. Sostiene que la reclasificación de un empleado no es cuestión discrecional y sí obligación ministerial del funcionario y que la reclasificación de un empleado debe ser efectiva desde que la agencia conoce que un empleado está realizando las funciones de un nivel de clasificación superior.
Son áreas esenciales al principio de mérito, según la Sec. 4.1 de la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. see. 1331: (1) la clasificación de puestos; (2) el reclutamiento y selección del personal; (3) los ascensos, traslados y descensos; (4) el adiestramiento; y (5) la retención del empleo. Mercado Vega v. U.P.R., 128 D.P.R. _ (1991), 91 J.T.S. 41; Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347, 356 n.4 (1988). *1100 La Ley de Personal estima que la clasificación del personal gubernamental es un "instrumento eficaz para la consecución de los programas de Gobierno" y que es por eso que la Administración Central de Personal y cada Administrador Individual "será responsable de establecer y mantener una estructura racional de funciones que propenda a la mayor uniformidad posible y que sirva de base para las diferentes acciones de personal". Art. 4.2 de la Ley, 3 L.P.R.A. see. 1332.
Para lograr este propósito la Ley de Personal le impuso el cumplimiento de varias obligaciones a las autoridades nominadoras o al Director de la Oficina Central de Administración de Personal, según les corresponda, como, por ejemplo: (1) identificar unidades lógicas de trabajo integradas por grupos de deberes y responsabilidades que constituyan las unidades básicas de trabajo, o sea, los puestos; éstos, a su vez, serán agrupados en clases de puestos; (2) formar las clases de puestos agrupando puestos cuyo conjunto de deberes sean de tal modo semejantes en cuanto a autoridad, responsabilidad, complejidad e índole del trabajo a ejecutar, que pueda exigirse de sus incumbentes requisitos análogos, así como las mismas pruebas para su selección, y que se le pueda aplicar la misma retribución; (3) preparar por escrito la descripción o especificaciones de cada clase incluyendo los diferentes niveles de responsabilidad, autoridad y complejidad del grupo de los puestos que forman la clase; (4) establecer planes de clasificación separados para los servicios de carrera y de confianza; (5) establecer mecanismos para la creación, eliminación, consolidación y modificación de clases de manera que se mantenga al día; y (6) crear, eliminar, consolidar y modificar las clases de puesto comprendidas en el plan de clasificación.
La Parte III, Art. 5, del Reglamento de Personal del Departamento de Salud, avalado por el Director de la Oficina Central de Administración de Personal el 25 de septiembre de 1992, implanta la política pública estatuida en la Ley de Personal del Servicio Público, en lo concerniente al establecimiento, mantenimiento y revisión de un plan de clasificación. En la Sec 5.1 el Reglamento dispone que:

"El plan de clasificación [del Departamento de Salud] reflejará la situación de todos los puestos en el servicio de carrera de la agencia a una fecha determinada, constituyendo así un inventario de los puestos autorizados a la agencia en todo momento. Para lograr que el plan de clasificación sea un instrumento de trabajo adecuado y efectivo en la administración de personal, se mantendrá al día registrando los cambios que ocurran en los puestos, de forma tal que en todo momento el plan refleje exactamente los hechos y condiciones reales presentes y mediante la actualización de las especificaciones de clases y las asignaciones de puestos a las clases. Se establecerán, por lo tanto, los mecanismos necesarios para hacer que el plan de clasificación sea susceptible a una revisión y modificación continua deforma que constituya una herramienta de trabajo efectiva."

De acuerdo con la See. 5.6 del Reglamento, se justifica reclasificar todo puesto cuando concurra alguna de cuatro circunstancias que allí se enumeran, siendo la pertinente al caso de autos la debida a "un cambio deliberado y sustancial en la naturaleza o al nivel de las funciones del puesto, que lo hace subir o bajar de jerarquía o la ubica en una clase distinta al mismo nivel". Reglamento, a la pág. 14. El Reglamento señala igualmente que "[cjualquier cambio que ocurra en los deberes y responsabilidades, así como en el grado de autoridad y supervisión adscritos a los puestos, se registrará prontamente en el cuestionario de clasificación y no menos de una vez al año se pasará juicio sobre la clasificación de éstos". See. 5.2, párr. 2do del Reglamento, a la pág. 8. "El original del cuestionario oficial formalizado originalmente, así como el de toda revisión posterior que se efectúe, será evaluado para determinar la clasificación del puesto o para la acción subsiguiente que proceda en los casos de revisión de deberes, según se provea en las normas y procedimientos que se establezcan para la administración del plan de clasificación." Id., párr. 3ro. (énfasis nuestro).
La clasificación de puestos es una prerrogativa gerencial del patrono gubernamental, pues se trata de un instmmento para la administración de los recursos humanos. Esto significa que le corresponde a la autoridad nominadora la plena facultad de determinar cuáles son los puestos necesarios para realizar la misión de la agencia y cuáles son las funciones a realizar y los requisitos que debe tener el incumbente de un puesto específico. Sin embargo, la autoridad del patrono no es ni puede ser absoluta, pues tratándose de un elemento esencial del principio de mérito, cada empleado tiene derecho a ser correcta y oportunamente clasificado. Es 'por eso que el propio Reglamento de Personal requiere que la revisión del plan de clasificación se haga según las normas y procedimientos que el Departamento de *1101 Salud establezca para la administración de dicho plan.
El Departamento de Salud no nos ha indicado cuáles son las normas y procedimientos que ha establecido, si algunas, para regular el trámite de reclasificación de algún empleado que esté desempeñando funciones correspondientes a otro puesto de nivel superior dentro de la misma clase, ya sea porque el propio empleado lo solicite o ya porque algún gerente sea quien lo promueva. En el caso de autos, no está en controversia que el Departamento de Salud admite que procedía la reclasificación del recurrente, es decir, que se había ejercido la prerrogativa gerencial de reclasificarlo, siendo más bieñ la controversia en cuanto al momento de su efectividad. Como el Departamento no nos ha indicado cuáles son las normas y procedimientos establecidas para determinar la fecha de efectividad de una reclasificación de un puesto y, de hecho, no cuestiona la facultad de JASAP para disponer la misma, no creemos que la fecha de efectividad esté atada inexorablemente a la fecha de la solicitud de la solicitud formal del empleado.
La realidad es que existe evidencia sustancial en el récord administrativo que revela que procedía la reclasificación pero que la agencia se rehusó a llevarla a cabo por razón de una alegada falta de presupuesto para hacerla. Con el escrito de apelación ante la JASAP se adjuntaron dos comunicaciones fechadas el 23 de diciembre de 1994 y el 23 de enero de 1995. De ambas se desprende que desde el 6 de diciembre de 1994 la oficina de personal había sometido a la oficina de presupuesto del propio Departamento la solicitud de reclasificación del puesto número L-2564 de Químico IV a Químico V. Dicho puesto era el ocupado por el recurrente Soto Vázquez haciendo funciones de supervisor del Laboratorio de Toxicología de Alcohol. Ambas comunicaciones corroboran que la única razón para no acceder a la reclasificación del recurrente fue puramente económica —falta de presupuesto— y no que no se hubiese hecho alguna solicitud al efecto por parte del empleado.
En las circunstancias de este caso no creemos, por tanto, que una solicitud escrita del propio empleado, distinta a la solicitud evidentemente hecha por sus supervisores a la oficina de personal del Departamento, hubiese marcado la diferencia entre la aprobación y la desaprobación de su reclasificación. Nótese que aun cuando el propio empleado hizo posteriormente la solicitud formal mediante carta de 23 de mayo de 1995 por conducto de sus abogadas, el Departamento nada hizo. Eso obligó al empleado a instar el presente recurso que la JASAP acogió y resolvió a su favor. La ley y el reglamento le imponían al Departamento la obligación de reclasificar al recurrente tan pronto ocurriera "un cambio deliberado y sustancial en la naturaleza o [en el] nivel de las funciones del puesto, que lo [hicieran] subir o bajar de jerarquía". El Departamento simplemente no cumplió su obligación legal por razones ajenas al principio de mérito. El Departamento no debe beneficiarse de la desviación e incumplimiento de la ley y de su propio Reglamento. La fecha de efectividad, en las circunstancias particulares de este caso, no puede ser la fecha de la solicitud formal del empleado a través de sus abogadas, sino la fecha anterior en que la oficina de personal, conociendo que procedía la enmienda al plan de clasificación, sometió a la oficina de presupuesto del propio Departamento la solicitud de reclasificación del recurrente de Químico IV a Químico V. Esta fecha es el 6 de diciembre de 1994.
Con estos antecedentes, se expide el auto solicitado y se modifica la decisión administrativa recurrida para disponer que la reclasificación del recurrente Johnny Soto Vázquez será efectiva al 1ro. de enero de 1995 y, así modificada, se confirma.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA 64
1. El recurrente también unió al apéndice copia de un documento que alega que encontró entre sus papeles luego de haber finalizado el caso ante la JASAP. Dicho documento es copia de un memorando fechado el 3 de agosto de 1994 de parte del Director del Instituto de Laboratorios de la Administración de Facilidades y Servicios de Salud a todos los químicos de dicho Instituto del cual se desprenden las funciones de supervisión que el *1102 recurrente tenía asignadas. [Estamos cíe acperdo con el Departamento de Salud cuando afirma que un documento incluido por primera vez ante (nosotros, el cual no fue presentado ante la JASAP y, por lo tanto, no fue considerado por ésta, no puede ser considerado por este Tribunal. Véase nuestra Regla 59(E)(2). Por tal razón, no lo hemos tomado en cuenta.
2. El Departamento de Salud es un Administrador Individual. Reglamento de Personal del Departamento de Salud, Introducción, a la pág. 1.