Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| JORGE MARÍN ROBLES<br><br>Recurrente<br><br><br>v.<br><br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | TA2025RA00245 | *REVISIÓN ADMINISTRATIVA* procedente del Comité de Clasificación y Tratamiento<br><br>Caso número: 1-65460<br><br>Sobre: Revisión de decisión administrativa |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de octubre de 2025.

Comparece ante nos, por derecho propio, la parte recurrente, Jorge Marín Robles, mediante un recurso de revisión judicial en el que solicita que revisemos la determinación del Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación de darle de baja de su participación en el Programa de Empresas de Adiestramiento y Trabajo.

Por los fundamentos que expondremos a continuación, se desestima el recurso de epígrafe por falta de jurisdicción, debido a que su presentación es prematura. Veamos.

## I

Según surge del recurso ante nos, el 12 de julio de 2018, Jorge Marín Robles (Marín Robles o recurrente) fue asignado al área de ebanistería del Programa de Empresas de Adiestramiento y Trabajo (PEAT).[1] De la copia certificada del expediente administrativo surge que, el 12 de agosto de 2025, el oficial correccional D. Rodríguez

---

[1] Entrada Núm. 1 del Caso Núm. TA2025RA00245 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Román (Rodríguez Román) informó un incidente con Marín Robles en el área de trabajo.[2] En particular, indicó que Marín Robles tuvo una actitud poco cooperadora y subió su tono de voz cuando se le orientó —como en ocasiones anteriores— que no podía sacar las fajas para la espalda del área de trabajo. Arguyó que, al momento de la orientación, Marín Robles tuvo una actitud negativa y solicitó que lo regresaran a la institución carcelaria. Según adujo, lo anterior se consideraba un abandono de trabajo y representaba un ejemplo negativo para la población correccional, lo cual podría desestabilizar el ambiente laboral en el taller y resultar en un problema de seguridad mayor. En virtud de ello, Rodríguez Román solicitó que a Marín Robles se le diera de baja de rendir sus labores.

En igual fecha, el oficial Luis A. Rodríguez Maisonet (Rodríguez Maisonet) sometió una misiva en la cual indicó que había presenciado el referido incidente.[3] En específico, expresó lo siguiente:

> Informo que[,] aproximadamente a las 9:45 a.m., mi compañero[,] el [o]ficial D. Rodríguez #12842[,] procedía a orientar al confinado Jorge Marín Robles (501 (1-A)) delante de este servidor como testigo. No obstante[,] al momento de que mi compañero lo orientara[,] el confinado comenzó a alzar la voz de manera retante a la autoridad, aparentando no tener control sobre su enojo y gritando que fuera llevado de vuelta a su cárcel de procedencia. Continuó y fue donde la maestra León y el maestro Jaime Rodríguez[,] a quienes le expresó que se iba del taller. Esta actitud fue tomada como una retante a la oficialidad, abandono de trabajo y provocar alteración en el ambiente laboral. Por las acciones y comportamiento antes mencionado, el [o]ficial D. Rodríguez procedió a llevarlo de vuelta a la institución y a darle de baja de los talleres [del] PEATC *[sic]*. De igual manera[,] que su social lo refiera para tomar talleres sobre control de impulsos.

Posteriormente, el 26 de agosto de 2025, el Comité de Clasificación y Tratamiento (Comité) del Departamento de Corrección y Rehabilitación (Departamento de Corrección) le notificó al recurrente que le daba de baja del Programa de Empresas de

---

[2] Anejo I en la Entrada Núm. 4 del Caso Núm. TA2025RA00245 en el SUMAC.
[3] Anejo I en la Entrada Núm. 4 del Caso Núm. TA2025RA00245 en el SUMAC.

Adiestramiento y Trabajo (PEAT).[4] Ello, a petición del oficial Rodríguez Román.

Insatisfecho, el 22 de agosto de 2025, el recurrente presentó una *Solicitud de Remedio Administrativo* ante la División de Remedios Administrativos (DRA) del Departamento de Corrección.[5] Mediante la referida solicitud, Marín Robles impugnó el proceder del Comité. Ese mismo día, la División de Remedios Administrativos emitió una *Respuesta al Miembro de la Población Correccional*, en la que sostuvo el proceder del Comité, de darle de baja del PEAT.[6] Esta determinación fue notificada por la evaluadora el 28 de agosto de 2025 y recibida por el recurrente el 4 de septiembre de 2025.

Aún inconforme, el 4 de septiembre de 2025, Marín Robles presentó una *Solicitud de Reconsideración*, la cual fue recibida por la DRA el 12 de septiembre de 2025.[7] El 26 de septiembre de 2025, la agencia emitió una *Respuesta de Reconsideración al Miembro de la Población Correccional*,[8] en la que resolvió acoger la petición de reconsideración. Sin embargo, la agencia aún no ha adjudicado en los méritos la *Solicitud de Reconsideración* instada por el recurrente.

No obstante, debido a su inconformidad con la determinación del Comité de darle de baja del PEAT, el 29 de agosto de 2025,[9] Marín Robles también compareció ante este Foro mediante el recurso de epígrafe. En específico, formuló los siguientes señalamientos de error:

> Err[ó] el [C]omit[é] de [C]lasificaci[ó]n y [T]ratamiento al llegar a los acuerdos de dar de baja de rendir labores en el P.E.A.T. por petici[ó]n del oficial Rodr[í]guez al peticionario arbitrariamente sin la celebraci[ó]n de una vista exhaustiva y justa en violaci[ó]n a los derecho[s] del peticionario al debido proceso de ley.

---

[4] Anejo I en la Entrada Núm. 4 del Caso Núm. TA2025RA00245 en el SUMAC.
[5] Anejo II en la Entrada Núm. 4 del Caso Núm. TA2025RA00245 en el SUMAC.
[6] Anejo II en la Entrada Núm. 4 del Caso Núm. TA2025RA00245 en el SUMAC.
[7] Anejo II en la Entrada Núm. 4 del Caso Núm. TA2025RA00245 en el SUMAC.
[8] Anejo II en la Entrada Núm. 4 del Caso Núm. TA2025RA00245 en el SUMAC.
[9] La Secretaría de este Foro recibió el recurso de epígrafe el 18 de septiembre del mismo año.

Err[ó] el [C]omit[é] de [C]lasificaci[ó]n y [T]ratamiento al llegar al acuerdo de dar de baja al peticionario de rendir labores "trabajo" en el P.E.A.T. sin un proceso justo e imparcial en violaci[ó]n al derecho del [p]eticionario al debido proceso de ley.

Err[ó] el [C]omit[é] de [C]lasificaci[ó]n y [T]ratamiento al llegar al acuerdo parcialisadamente *[sic]* de dar de baja de rendir labores en el P.E.A.T. al peticionario, sin la celebración de una vista, en donde el peticionario se pudiera defender y ser o[í]do, presentar testigo a su favor, evidencia seg[ú]n las exigencia[s] del debido proceso de ley que le garantiza el [A]rt. II[,] [S]ecci[ó]n 11 de la [C]onstitución del Estado Libre [A]sociado de Puerto Rico.

Err[ó] el [C]omit[é] de [C]lasificaci[ó]n y [T]ratamiento al dar de baja de rendir labores en el P.E.A.T. al peticionario sin un procedimiento legal y [j]usto que violent[ó] el debido proceso de ley que exige la [C]onstituci[ó]n del Estado Libre [A]sociado de Puerto Rico en el [A]rt. II[,] [S]ecci[ó]n 11.

Por su parte, en cumplimiento con nuestra *Resolución* del 23 de septiembre de 2025, el Departamento de Corrección compareció ante este Foro, por conducto de la Oficina del Procurador General. Mediante el *Escrito en cumplimiento de Resolución* presentado el 24 de octubre de 2025, la parte recurrida argumentó esencialmente que carecemos de jurisdicción para atender el recurso de epígrafe, debido a que Marín Robles no recurre de una determinación administrativa final.

Con el beneficio de la comparecencia de las partes, así como con la copia certificada del expediente administrativo, procedemos a resolver.

**II**

**A**

La jurisdicción es el poder o autoridad que posee un tribunal para considerar y decidir un caso o controversia. *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. ELA*, 211 DPR 521, 529 (2023); *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135, 144 (2023); *Cobra Acquisitions, LLC. v. Municipio de Yabucoa* 210 DPR 384, 394 (2022). Nuestro Tribunal Supremo ha

reiterado que los tribunales debemos ser fieles guardianes de nuestra jurisdicción y en que no tenemos discreción para asumir jurisdicción allí donde no la hay. Es decir, la jurisdicción incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Management Group, Inc. v. Oriental Bank,* 204 DPR 374, 386 (2020); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007). En consecuencia, les corresponde a los foros adjudicativos examinar su propia jurisdicción. *S.L.G. Szendrey-Ramos v. F. Castillo.,* supra, pág. 883.

La falta de jurisdicción tiene las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede este arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio. S.L.G. Solá-Moreno v. Bengoa Becerra,* 182 DPR 675, 682 (2011). Por tanto, cuando este Foro carece de jurisdicción, "procede la inmediata desestimación del recurso apelativo [...]". *S.L.G. Szendrey-Ramos v. F. Castillo,* supra, pág. 883.

**B**

El Artículo 4.006 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003, 4 LPRA sec. 24y(c), solo autoriza al Tribunal de Apelaciones a revisar las órdenes o **resoluciones finales** emitidas por organismos o agencias administrativas. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113 (2023). De este modo, una orden o resolución se considera final cuando ha sido emitida por la última autoridad decisoria o adjudicativa del ente administrativo y **pone**

**fin a la controversia ante la agencia, sin dejar asunto pendiente alguno**. *Bird Const. Corp. v. AEE*, 152 DPR 928, 935-936 (2000); *J. Exam. de Tec. Med. v. Elías et al.*, 144 DPR 483, 490 (1997). Así, pues, el sistema propende a agotar, en primera instancia, los remedios provistos a nivel administrativo, antes de que proceda la intervención del foro judicial para revisar las determinaciones de las agencias.

Cónsono con lo anterior, la Sección 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672, dispone que:

> **Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones**, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 9655 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. [...]. (Énfasis nuestro).

Asimismo, la doctrina de agotamiento de remedios administrativos está recogida en la citada sección. Dicha doctrina constituye, junto a la de jurisdicción primaria,[10] una norma de abstención judicial que pretende lograr que las reclamaciones sometidas inicialmente a la esfera administrativa lleguen al foro judicial en el momento adecuado. *Igartúa de la Rosa, et als. v. A.D.T.*, 147 DPR 318, 331 (1998). Su objetivo principal es evitar una intervención judicial innecesaria y a destiempo que tienda a

---

[10] Sobre la doctrina de jurisdicción primaria, el Tribunal Supremo dispone que esta se utiliza para determinar qué foro tiene jurisdicción original para dilucidar una controversia, si el judicial o el administrativo, en aquellos casos en que haya incertidumbre al respecto, de acuerdo con las funciones gubernamentales que la Asamblea Legislativa les delega a algunas agencias administrativas. Véase, *Rodríguez Rivera v. De León Otaño,* 191 DPR 700, 709 (2014).

interferir con el cauce y desenlace normal del procedimiento administrativo. *Delgado Rodríguez v. Nazario de Ferrer*, 121 DPR 347, 355 (1988).

Así, pues, la doctrina de agotamiento de remedios administrativos constituye un requisito jurisdiccional que no debe ser soslayado, a menos que se configure alguna de las limitadas excepciones que, al amparo de nuestro ordenamiento jurídico, justifican el trámite administrativo. *Igartúa de la Rosa v. A.D.T.,* supra, pág. 331. A tenor con ello, la Sección 4.3 de la LPAU dispone las excepciones a la referida doctrina:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA sec. 9673.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

Luego de analizar el recurso de epígrafe, en conjunto con la copia certificada del expediente administrativo y el *Escrito en Cumplimiento de Resolución* presentado por la parte recurrida, concluimos que estamos impedidos de atender los señalamientos de error formulados por Marín Robles. Esto, debido a que no solicitó la revisión de una resolución administrativa con carácter final. En consecuencia, carecemos de jurisdicción para adjudicar el presente recurso en sus méritos. Veamos.

De acuerdo con la información que surge del expediente administrativo, tras un incidente ocurrido el 12 de agosto de 2025, el Comité determinó dar de baja al recurrente del PEAT. El

Departamento de Corrección le notificó esta acción a Marín Robles el 26 de agosto de 2025. Como resultado de ello, el recurrente inició un procedimiento administrativo al amparo del Reglamento Núm. 8583 de 4 de mayo de 2015 del Departamento de Corrección,[11] con la presentación de una *Solicitud de Remedio Administrativo* instada el **22 de agosto de 2025** ante la División de Remedios Administrativos. Como adelantáramos, este procedimiento administrativo actualmente está encaminado. No obstante, aún no cuenta con una resolución final que sea revisable ante este Foro, toda vez que el **26 de septiembre de 2025**, la Coordinadora a cargo de adjudicar la *Solicitud de Reconsideración* del recurrente se limitó a notificar que esta se acoge y aún transcurre el término reglamentario para su adjudicación en los méritos.

A pesar de ello, el **29 de agosto de 2025,** el recurrente presentó el recurso de epígrafe ante este foro. En este, expresó que recurría *de la determinación del Comité* de darle de baja del PEAT. Nótese que se trata del mismo asunto que motivó el que este iniciara el procedimiento administrativo que aún se encuentra pendiente de adjudicación final ante la DRA.

Según la Regla VI(1)(a) del Reglamento Núm. 8583, la DRA es el ente administrativo con jurisdicción para atender solicitudes de remedio administrativo que versen sobre "[a]ctos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional". En consecuencia, es forzoso concluir que la DRA posee la jurisdicción primaria para dilucidar si el Comité actuó correctamente al dar de baja al recurrente del PEAT.

Una vez iniciado un procedimiento de *Solicitud de Remedio Administrativo* ante la DRA, la sección XIV(4) del Reglamento

---

[11] *Reglamento para atender las solicitudes de remedios administrativos radicadas por los miembros de la población correccional.*

Núm. 8583 dispone que un Coordinador cuenta con quince (15) días, contados a partir de la fecha de presentación de una solicitud de reconsideración oportuna, para informarle al miembro de la población correccional si la acoge. Una vez el Coordinador notifica su determinación de acoger la solicitud de reconsideración, la Regla XIV(4) dispone que este cuenta con un término de treinta (30) días laborables para emitir una *Resolución en Reconsideración.*

En este caso, el 12 de septiembre de 2025, el recurrente presentó una *Solicitud de Reconsideración* ante la DRA, que fue acogida por la Coordinadora encargada el 26 de septiembre de 2025, es decir, en el día catorce (14) del término del mencionado término de quince (15). Por consiguiente, aun transcurre el término de treinta (30) días laborables con que esta cuenta para adjudicar la reconsideración. Una vez la Coordinadora emita el dictamen en los méritos, en caso de que este le resulte adverso a Marín Robles, entonces comenzará a transcurrir el término de treinta (30) días calendarios que se contempla en la Regla XV(1) del Reglamento Núm. 8583 para instar un recurso de revisión judicial ante este Foro.

En virtud de todo lo anterior, no albergamos duda respecto a que la DRA es el ente administrativo con jurisdicción primaria para dilucidar la corrección de la actuación impugnada por el recurrente. Asimismo, de conformidad con la doctrina de agotamiento de remedios administrativos, nos vemos impedidos de pasar juicio sobre la corrección de un trámite administrativo que aún no ha culminado. Consecuentemente, es forzoso concluir que la presentación del recurso ante nos es prematura, por lo que carecemos de jurisdicción para dilucidarlo.

**IV**

Por los fundamentos que anteceden, se desestima el recurso de epígrafe por falta de jurisdicción, debido a que su presentación resulta prematura.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones