CONCHITA IGARTÚA DE LA ROSA ET ALS., demandantes y peticionarios, *v.* ADMINISTRACIÓN DEL DERECHO AL TRABAJO ET ALS., demandados y recurridos.

*Número:* CC-96-2          *Resuelto:* 23 de diciembre de 1998

*Carlos J. Acevedo Lazzarini*, abogado de la parte peticionaria; *Ramón Luis Julia Ramos*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Debemos determinar cuándo comenzó a transcurrir el término prescriptivo de un año que la peticionaria —en el caso de epígrafe— tenía para instar una acción por discrimen político y violación de derechos civiles contra la Administración del Derecho al Trabajo. Además, debemos resolver si al no acudir oportunamente ante la Junta de Apelaciones del Sistema de Administración de Personal a cuestionar cierta determinación de su patrono, incumplió con el requisito jurisdiccional de agotar los remedios administrativos antes de acudir al foro judicial.

## I

La Sra. Conchita Igartúa de la Rosa laboró desde 1989 en un puesto de carrera como Oficial Ejecutiva III en la Administración del Derecho al Trabajo (en adelante A.D.T.). Como parte de sus responsabilidades en dicho puesto, fungía como Subdirectora de la Oficina Regional de Aguadilla, aunque no ocupaba esta plaza en propiedad.

En junio de 1992 fue nombrada en propiedad en la posición de Directora Regional de la Oficina de Aguadilla. Aunque esta nueva posición era de confianza, la ocupó sin renunciar a los derechos que había adquirido previamente como empleada de carrera.

Luego de las Elecciones Generales de 3 de noviembre de 1992 y el cambio de administración en la agencia en enero de 1993, Igartúa de la Rosa solicitó ser reinstalada a su antiguo puesto como empleada de carrera. Su solicitud fue concedida, por lo que el 25 de enero de 1993 comenzó a laborar en el puesto de carrera que anteriormente ocupaba en la A.D.T. Sin embargo, al regresar a su puesto original no le fueron asignadas las responsabilidades que ejerció bajo la administración anterior como Subdirectora de la Oficina Regional de Aguadilla. Ante ello, solicitó a la agencia un desglose de las funciones que debía realizar.

Hubo un intercambio de cartas entre las partes, relacionado a las funciones que Igartúa debía ejercer, al cual nos referiremos oportunamente. Eventualmente, el Sr. Wilfredo Martínez Ruvira, entonces Administrador de la agencia, le remitió a Igartúa de la Rosa una carta con fecha de 3 de mayo de 1993, en la que le expresó que no habría de fungir como Subdirectora Regional ya que, a su juicio, "de la propia Especificación de Clase de Oficial Ejecutivo III, la función de Subdirector no se considera[ba] como … mandatoria, sino discrecional". Apéndice de la apelación, pág. B-19. Según surge del expediente, Igartúa de la Rosa recibió esta notificación el 26 de mayo de 1993. Véase la Hoja de Trámite de la Oficina Regional de la A.D.T., Apéndice de la apelación, pág. B-18 (en la cual se indica que la señora Igartúa recibió la carta del Administrador el 26 de mayo de 1993).

No conforme con esta decisión, el 28 de junio de 1993, Igartúa de la Rosa presentó una apelación ante la Junta de Apelaciones del Sistema de Administración de Personal (en adelante J.A.S.A.P.). En ella alegó que el título funcional del puesto de carrera sobre el cual tenía derechos propietarios era el de Subdirector de la Oficina Regional de Aguadilla y que al ser reinstalada a su puesto original había sido despojada del ejercicio de las funciones inherentes a dicho cargo. En consecuencia, reclamó el derecho a desem-

peñar las funciones relacionadas a este puesto. Apéndice de la apelación, págs. B-28-B-29.

El 5 de noviembre de 1993, la J.A.S.A.P. desestimó el recurso por falta de jurisdicción. A juicio del foro administrativo apelativo, el recurso fue presentado fuera del término de treinta (30) días que establece la ley para acudir ante dicho organismo. Véase 3 L.P.R.A. sec. 2172. Una moción de reconsideración presentada por Igartúa de la Rosa fue declarada no ha lugar mediante una resolución de 13 de diciembre de 1993. Igartúa no solicitó la revisión judicial de esta determinación.

Ante lo anterior, y ante la continuada negativa de la agencia de acceder a asignarle los deberes que antes realizaba como Subdirectora Regional, el 26 de mayo de 1994 Igartúa de la Rosa inició un procedimiento judicial en el extinto Tribunal Superior por el alegado discrimen en el empleo. En éste alegó, en síntesis, que había sido discriminada y humillada por razón de su afiliación política. Alegó, además, que el despojo de las funciones inherentes a su puesto era parte del discrimen en su contra.

En diciembre de 1994, la A.D.T. contestó la demanda. Además, presentó una moción de desestimación en la que adujo que la reclamación estaba prescrita ya que había sido instada transcurrido el término de un año que establece el Art. 1868 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5298. Planteó, además, que la J.A.S.A.P. había adjudicado con carácter de finalidad varios de los elementos esenciales de su demanda, por lo que, a su juicio, Igartúa de la Rosa estaba impedida de relitigarlos.

Luego de examinar los argumentos de las partes, el tribunal de instancia emitió una resolución en la que declaró no ha lugar la solicitud de desestimación. Contra esta determinación, la A.D.T. acudió ante el Tribunal de Circuito de Apelaciones, el cual revocó. A juicio del foro apelativo, Igartúa de la Rosa presentó su demanda luego de expirar el término de un año que tenía para ello. Estimó el Tribu-

nal de Circuito de Apelaciones que la fecha de 3 de mayo de 1993 era el punto de partida del término prescriptivo, ya que en esa ocasión la reclamante recibió una carta del Administrador de la agencia en la que se le informó que no fungiría como Subdirectora Regional. Añadió el tribunal apelativo que: "[l]a demanda, sin embargo, no fue presentada sino hasta el 26 de mayo de 1994, más de un año después de dicha fecha y un año y cuatro meses después de la fecha en que la reinstalaron a su puesto de Oficial Ejecutiva III." Sentencia del Tribunal de Circuito de Apelaciones de 9 de noviembre de 1995, pág. 7; Apéndice de la apelación, pág. C-37. En virtud de lo anterior, ordenó la desestimación de la reclamación contra A.D.T.

Contra esta determinación Igartúa de la Rosa acudió ante nos. Aunque denominó su escrito como una "Petición de *certiorari*", en virtud de las disposiciones de ley vigentes a la fecha de presentación del recurso ante nos (2 de enero de 1996), lo acogimos como un recurso de apelación. Véase el Plan de Reorganización Núm. 1a de la Rama Judicial de Puerto Rico de 1994.

La única controversia planteada ante nuestra consideración en el recurso es si erró el Tribunal de Circuito de Apelaciones al resolver que la demanda estaba prescrita. Debemos, por lo tanto, determinar cuándo comenzó a transcurrir el término prescriptivo que Igartúa de la Rosa tenía para instar la acción por violación a sus derechos civiles y discrimen en el empleo.

## II

Conforme a nuestros pronunciamientos previos, el término prescriptivo de un año que establece el Art. 1868 del Código Civil de Puerto Rico, *supra*, es el término aplicable a las acciones por razón del discrimen en el empleo.[1]

---

[1] Este artículo dispone:
"Prescriben por el transcurso de un año:

*Cintrón v. E.L.A.*, 127 D.P.R. 582, 590 (1990). Por imperativo del propio Art. 1868, *supra*, este término comienza a transcurrir desde que el agraviado tuvo conocimiento del daño.

En *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988), resolvimos que en casos de cesantías de empleados públicos el término prescriptivo comienza a computarse desde el momento en que el empleado es informado de la cesantía. No obstante, allí advertimos que "la determinación del momento exacto en que se conoce o debió razonablemente conocer el daño, 'constituye un delicado problema de prueba e interpretación' ". Íd., pág. 360. Véase, además, *Rivera Encarnación v. E.L.A.*, 113 D.P.R. 383, 385 (1982). Destacamos que el momento cuando *se produce el daño* no es el criterio determinante en el inicio del cómputo del término prescriptivo, sino el momento en que el perjudicado *adviene en su conocimiento*.

■ Más tarde, en *Cintrón v. E.L.A.*, supra, aclaramos que la norma establecida en *Delgado Rodríguez v. Nazario de Ferrer*, supra, no era exclusiva a las situaciones de cesantías, sino que era más abarcadora. Afirmamos que la norma "[a]plica cuando un empleado público es objeto de una acción discriminatoria arbitraria o ilegal, bien sea despido, traslado, reclasificación, cambio de *status*, etc.". *Cintrón v. E.L.A.,* supra, pág. 592. Al resumir la norma aplicable en cuanto al inicio del cómputo del término prescriptivo en estos contextos, dijimos:

> ... En tales casos, el término prescriptivo comienza a correr *con la notificación al empleado de la actuación administrativa de la autoridad nominadora* y no con el decreto de ilegalidad [por parte de la J.A.S.A.P.]. Es desde aquel momento que el empleado *tiene o debe tener conocimiento de los daños causados*

---

"(1) La acción para recobrar o retener la posesión.
"(2) La acción para exigir la responsabilidad civil por injuria o calumnia, y las obligaciones derivadas de la culpa o negligencia de que se trata en [el Art. 1802 de esta ley] desde que lo supo el agraviado." 31 L.P.R.A. sec. 5298.

*por la actuación de la agencia.* (Énfasis en el original suprimido y énfasis suplido.) Íd.

■ Claro está, como toda acción sujeta a un término prescriptivo, en situaciones de reclamaciones por razón de discrimen en el empleo el término para instar la acción puede ser interrumpido por el oportuno ejercicio de la acción ante los tribunales, por reclamación extrajudicial del acreedor o por cualquier acto de reconocimiento de la deuda por parte del deudor. Art. 1873 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5303.

La solución del caso de autos está cubierta por las normas expresadas. Examinemos, por lo tanto, cuándo Igartúa de la Rosa advino en conocimiento del daño por el cual reclama indemnización para determinar si, en efecto, al instar la demanda en el tribunal de instancia el 26 de mayo de 1994, la acción estaba prescrita.

### III

A. Surge del expediente ante nos que la señora Igartúa de la Rosa fue reinstalada a su posición de carrera en la A.D.T. el 25 de enero de 1993. Al notificar esta reinstalación, el Administrador Wilfredo Martínez Ruvira le remitió una carta con fecha de 20 de enero de 1993. En ella le indicó que con efectividad al 25 de enero de 1993 comenzaría "a ocupar el Puesto Número A-023 de Oficial Ejecutivo III adscrito a la Oficina Regional de Aguadilla". Anejo E-1, pág. 78. En ella, además de expresarle el salario mensual que devengaría, el Administrador le indicó que ocuparía un puesto de carrera y que conservaría su estatus de empleado regular en el servicio de carrera. Además, le informó lo siguiente:

Próximamente le haremos entrega de la Descripción del Puesto (OCAP-16) indicativa de los deberes y responsabilidades asignados al puesto que pasa a ocupar, así como copia del In-

forme de Cambio que registra oficialmente la acción de perso-
nal que le comunico. Apéndice de la apelación, pág. B-15.

Esta carta no contiene notificación alguna relacionada a
que la señora Igartúa de la Rosa dejaría de desempeñar las
funciones de Subdirectora Regional.

El 22 de febrero de 1993, la señora Igartúa de la Rosa
remitió una carta al Sr. Wilfredo Martínez Ruvira en la
que le indicó que habían transcurrido veintiún (21) días
laborables desde su reinstalación sin que le remitiesen la
notificación sobre la descripción de su puesto, que la propia
agencia le indicó que le sería remitida. Asimismo, le soli-
citó al Administrador de la A.D.T. que le asignara "funcio-
nes similares a las que ejercía antes de ocupar el puesto de
confianza como Directora Regional, en Aguadilla". Apén-
dice de la apelación, pág. B-12.

Surge de los autos que el 5 de marzo de 1993, la Oficina
Regional de Aguadilla le emitió a la señora Igartúa el for-
mulario Núm. OCAP-16, en el cual se detallaban las fun-
ciones que ejercería. Igartúa de la Rosa, sin embargo, lo
devolvió a la Oficina del Administrador sin firmarlo con el
fundamento de que en éste se habían omitido las funciones
de Subdirectora Regional que ejercía antes de ser ubicada
en un puesto de confianza. Al respecto indicó:

> La clasificación de Oficial Ejecutivo III que ocupé desde fe-
> brero de 1989 en la Oficina Regional de Aguadilla y en la cual
> fui re-instalada [sic] el 25 de enero de 1993 corresponde a las
> funciones de Sub-directora Regional por lo que no puedo acep-
> tar que aparezca en blanco el encasillado #7. De igual manera
> en el encasillado #9 no aparecen los oficiales ejecutivos I y otros
> funcionarios que supervisaba.
> Agradeceré se cumplimenten [sic] los encasillados #7 y #9 de
> la Ocap-16 de manera que pueda firmarla para realizar las ta-
> reas que corresponden a mi nombramiento. Apéndice de la ape-
> lación, Anejo E-g-2, pág. 76.

Tiempo después, el Sr. David Muñiz Torres, entonces
Director Regional de la A.D.T., le remitió una carta al Ad-

ministrador de la agencia en relación con las tareas asignadas a la señora Igartúa. Expresó en ella que

[l]a Sra. Igartúa de Suárez ocupa un puesto de Oficial Ejecutivo III en esta oficina Regional y las tareas que le he asignado están dentro de la clasificación de dicho puesto; las mismas no son de Sub-Directora Regional como ella alega, siendo esto así no procede la petición que le está formulando. Por dicho motivo no estoy endosando el memorando que le envía la señora Igartúa. Apéndice de la apelación, pág. B-17.

Más adelante expresa:

En cuanto a su alegación del apartado #9 [de la señora Igartúa], *debo indicarle que se debe figurar la supervisión que ejerce sobre los dos puestos de Oficial Ejecutivo I de esta Oficina Regional*. (Énfasis suplido.) Íd.

Esta carta tiene fecha de 16 de marzo de 1993 y, según consta en una hoja de trámite anejada, la señora Igartúa la recibió el 19 de marzo de 1993. Apéndice de la apelación, pág. B-16. Nótese que en ella el Director Regional le advierte al Administrador de la agencia que, tal y como la señora Igartúa afirmaba, en el formulario que describía las funciones de su puesto se había omitido incluir que supervisaría los puestos de Oficial Ejecutivo I.

Eventualmente, el Sr. Wilfredo Martínez Ruvira, Administrador de la A.D.T., le remitió a la señora Igartúa una carta en la que categóricamente le expresó, en parte, lo siguiente:

Luego de reunirnos y discutir la situación que plantea con el Sr. David Muñiz Torres, Director Regional, a la luz de la información y documentos disponibles y de las disposiciones reglamentarias aplicables, determiné revisar el documento original que usted se negó a firmar y disponer un cambio en los deberes asignados al puesto que ocupa, a base de las disposiciones de la Sección 5.10 del Reglamento de Personal para Empleados de Carrera de esta Agencia. Esto, en ánimo de lograr una utilización óptima de los recursos humanos disponibles. ...

Como podrá advertir de la propia Especificación de Clase de Oficial Ejecutivo III, la función de Subdirector no se contempla como una mandatoria, sino discrecional. Como cuestión de he-

cho, en su OCAP-16 original, previo pasar usted al Servicio de Confianza, no figura en el apartado número 7 la función de Subdirectora que usted reclama y en adición, al reinstalarla al Servicio de Carrera, no funge usted como tal. Le agradeceré que firme y entregue al señor Muñiz Torres el formulario OCAP-16 que le incluyo, el cual corresponde a las tareas de su puesto, a fin de concluir con este proceso y hacerle llegar su copia oficial. Apéndice de la Apelación, págs. B-19-B-20.

Finalmente, en la carta se advierte a Igartúa de la Rosa sobre su derecho a acudir a la J.A.S.A.P. a solicitar la revisión de esa determinación. La carta tiene fecha de 3 de mayo de 1993; sin embargo, obra en autos una hoja de trámite que revela que Igartúa de la Rosa la recibió *el 26 de mayo de 1993*. Apéndice de la apelación, pág. B-18.

La única forma en que la demanda judicial instada por Igartúa de la Rosa no estaría prescrita es si se toma esta fecha como punto de partida para el cómputo del término prescriptivo, ya que instó su demanda por alegado discrimen y violación de derechos civiles en el extinto Tribunal Superior el 26 de mayo de 1994. Esa es precisamente su contención ante nos.

B. Los hechos del caso nos persuaden de que Igartúa de la Rosa advino en conocimiento del daño que alega el 26 de mayo de 1993, fecha en que recibió la carta del Administrador de la A.D.T. que puso punto final a la controversia que hasta entonces existía con relación a sus funciones. Esta carta constituye *la notificación de la autoridad nominadora*, mediante la cual se le informó que no realizaría las funciones correspondientes al cargo de Subdirectora regional.

Antes del 26 de mayo de 1993 entre las partes sólo hubo un mero trámite administrativo que pretendía aclarar la naturaleza del puesto de carrera al que Igartúa había sido reinstalada. Al momento de su reinstalación Igartúa de la Rosa solicitó a la A.D.T. que le remitiera el formulario que describía su puesto. Luego de recibirlo, lo devolvió a la autoridad nominadora sin firmarlo, porque a su juicio, se ha-

bía omitido información relacionada al puesto. Más tarde, Igartúa de la Rosa recibió una copia de la carta enviada al Administrador de la A.D.T., en la que el Director Regional aceptaba que una de las funciones correspondientes al puesto de carrera de la señora Igartúa había sido omitida del formulario que lo describía. Es decir, el Director Regional de la A.D.T. en Aguadilla, aunque no endosaba la totalidad del reclamo de Igartúa de la Rosa, admitió en esa carta que en el formulario OCAP-16 que se le había enviado a Igartúa de la Rosa se había omitido información con respecto a las funciones de su puesto. Finalmente, el Administrador de la A.D.T. le remitió una carta a Igartúa en la que le notificó que no realizaría las funciones relacionadas al puesto de Subdirectora Regional.

En el caso de autos, la carta del Administrador de la A.D.T. de 3 de mayo de 1993, recibida por Igartúa de la Rosa el 26 de mayo de 1994, constituye *la notificación de la autoridad nominadora al empleado* que establece el inicio del cómputo del término prescriptivo de la acción reclamada en su demanda por alegado discrimen político. Al recibirla, la demandante advino en conocimiento de que la autoridad nominadora la había privado de ejercer las funciones como Subdirectora, lo que a su juicio, configura el daño alegado en su demanda.[2] Aunque este alegado daño inició al momento de su reinstalación, no es hasta esta notificación del Administrador de la A.D.T. que Igartúa conoce que, en efecto, existe.

Como antes expresamos, esta notificación fue recibida por ella el 26 de mayo de 1993. Por ello, al instar su de-

---

[2] La demanda de Igartúa de la Rosa señala que:

"... con motivo del discrimen político por parte de la co-demandada, Administración del Derecho al Trabajo, la parte co-demandante, Igartúa de la Rosa, ha sido privada de sus funciones, y estos [sic] a su vez han asignado las funciones propia[s] del puesto de Oficial Ejecutivo III a otros empleados, marginando así a la co-demandante de todo insumo [sic] significativo de los procedimientos y operaciones para esta [sic] ejercer adecuadamente sus responsabilidades y funciones, equivalente a una democión o despido constructivo." (Énfasis suprimido.) Demanda enmendada, pág. 4, Anejo, pág. I-175.

manda por violación a sus derechos civiles el 26 de mayo de 1994, exactamente un año más tarde, su reclamación fue presentada oportunamente. Erró el Tribunal de Circuito de Apelaciones al decidir lo contrario.

Lo anterior, sin embargo, no pone punto final a la discusión de este caso. La determinación del foro apelativo se basó, además, en el fundamento de que Igartúa de la Rosa estaba impedida de iniciar la reclamación debido a que debió agotar el trámite administrativo previo a acudir al cauce judicial. Asimismo, el foro apelativo sugiere en su sentencia que la J.A.S.A.P. adjudicó colateralmente un elemento esencial de su reclamación, a saber: que no contaba con un interés propietario sobre las funciones que reclamaba.

## IV

A. De entrada debemos destacar que no puede concluirse que la J.A.S.A.P. adjudicó colateralmente un elemento de la controversia que enmarca la demanda presentada por Igartúa en los tribunales, pues, como antes adelantamos, la J.A.S.A.P. determinó que no poseía jurisdicción para revisar la controversia. El señalamiento de dicha agencia en términos de que Igartúa de la Rosa no posee interés propietario alguno sobre las funciones de Subdirectora Regional fue efectuado en la resolución que declaró no ha lugar por falta de jurisdicción una moción de reconsideración de la querellante. Esta única expresión no constituye una adjudicación en los méritos de la controversia que de por sí le impida litigarla en el cauce judicial, pues, a juicio de la propia agencia, carecía de jurisdicción para ello.

Aclarado lo anterior, pasemos a considerar el planteamiento de la A.D.T. en términos de que Igartúa de la Rosa está impedida de iniciar esta reclamación judicial por no haber agotado los remedios administrativos.

■  B.  La doctrina de agotamiento de remedios administrativos constituye, junto a la doctrina de jurisdicción primaria, una norma de abstención judicial que pretende lograr que las reclamaciones sometidas inicialmente a la esfera administrativa lleguen al foro judicial en el momento apropiado. Su objetivo básico es "evita[r] una intervención judicial innecesaria y a destiempo que tiend[a] a interferir con el cauce y desenlace normal del proceso administrativo". *Delgado Rodríguez v. Nazario de Ferrer*, supra, pág. 355. Véase *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991).

Este principio general del derecho administrativo está recogido en la Sec. 4.2 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante la L.P.A.U.), según enmendada, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2172), la cual dispone que:

Una parte adversamente afectada por una orden o resolución final de una agencia *y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente* podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones .... (Énfasis suplido.)

■  Se trata de un requisito jurisdiccional que no debe ser soslayado, *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433 (1992), a menos que se configure alguna de las limitadas excepciones que al amparo de nuestro ordenamiento jurídico justifican preterir el trámite administrativo, como lo son, que: (1) el remedio que provee la agencia sea inadecuado; (2) se pudiera producir un daño irreparable al promovente y en el balance de los intereses no se justifique agotar los remedios administrativos; (3) se alegue la violación sustancial de derechos constitucionales, o (4) se trata de un caso claro de falta de jurisdicción de la

agencia, entre otras.(³) Véanse: *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 D.P.R. 42 (1993); *Colón v. Méndez, Depto. Recursos Naturales*, supra; *Delgado Rodríguez v. Nazario de Ferrer*, supra, pág. 355 esc. 3; *First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 426 (1983).

■ En el pasado hemos señalado que en situaciones en las cuales un empleado acude simultáneamente al foro administrativo y al foro judicial, es aconsejable suspender la acción judicial hasta tanto el dictamen administrativo advenga final y firme. De este modo se evita la duplicidad de esfuerzos y la posibilidad de determinaciones incompatibles o contradictorias. *Cintrón v. E.L.A.*, supra, pág. 595. Sin embargo, esto no significa que cuando la acción administrativa resulte imposible, como por ejemplo, cuando transcurre el término prescriptivo para instalarla, el obrero queda imposibilitado de acudir al cauce judicial para reclamar una indemnización por los daños que alega haber sufrido, en cuya adjudicación las normas de derecho administrativo no requieren la intervención primaria de la agencia administrativa.

■ Asimismo, en situaciones en las que se reclama al patrono una indemnización por violación de derechos civiles, el empleado público "queda excusado de acudir en primera instancia al foro administrativo para reclamar cualquier responsabilidad civil de dicho patrono". *Cintrón v. E.L.A.*, supra, pág. 595. Lo anterior es particularmente aplicable en situaciones en las que el foro administrativo, como es el caso de la J.A.S.A.P., no está facultado por ley

---

(³) Dispone la Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante la L.P.A.U.) al respecto:

"... en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa." 3 L.P.R.A. sec. 2173.

para conceder indemnización por los daños y perjuicios sufridos por un empleado como consecuencia de una actuación gubernamental. En tales circunstancias, el empleado público "debe acudir directamente al foro judicial con su acción en reclamo de daños y perjuicios para que se entienda interrumpido el término prescriptivo". (Escolio omitido.) Íd.

■ No obstante, la presentación de una reclamación por daños en los tribunales no puede ser utilizada como un subterfugio para burlar la obligación de agotar los remedios administrativos o para restarle finalidad a una determinación administrativa cuando, inmersa en la reclamación judicial, subyacen controversias que requieren ser adjudicadas inicialmente por el foro administrativo. Lo anterior es particularmente aplicable en situaciones, como la de este caso, en que la parte reclamante no acudió oportunamente ante el foro administrativo apelativo con jurisdicción y, eventualmente, no instó oportunamente un recurso de revisión judicial para cuestionar la denegatoria de su moción de reconsideración y optó por presentar una demanda independiente. En tales situaciones, los tribunales deben abstenerse de adjudicar aquellas controversias incluidas en la reclamación judicial cuya adjudicación está reservada al foro administrativo, ya sea por tratarse de una materia de jurisdicción exclusiva de ese foro, o porque su resolución requiere una previa intervención de la pericia administrativa, entre otras circunstancias propuestas en nuestro ordenamiento jurídico.

Con lo anterior en mente, examinemos la reclamación judicial instada por Igartúa de la Rosa.

## V

La controversia relacionada a si Igartúa de la Rosa fue despojada ilegalmente de las funciones de subdirección de la Oficina Regional de Aguadilla en enero de 1993 es una

controversia sobre la cual la J.A.S.A.P. posee jurisdicción primaria, reteniendo los tribunales una jurisdicción revisora limitada a cuestiones de derecho y a determinar si las determinaciones de hecho se fundamentan en evidencia sustancial. Sec. 7.14 de la Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1394). Véanse, además: *Otero Martínez v. Gobernador*, 106 D.P.R. 552 (1977). Esa fue precisamente la controversia específica que fue llevada ante la J.A.S.A.P.(4)

La J.A.S.A.P. determinó que no poseía jurisdicción sobre la reclamación. Más tarde, el foro administrativo apelativo declaró no ha lugar una moción de reconsideración presentada por la peticionaria. Igartúa de la Rosa no instó un procedimiento de revisión judicial para cuestionar esta determinación. En su lugar optó por iniciar un procedimiento judicial independiente en el cual alegó que sus derechos civiles habían sido violados.

Al no acudir oportunamente ante los tribunales con un recurso de revisión judicial, la determinación de la J.A.S.A.P. de que carecía de jurisdicción sobre su reclamación y la determinación de la autoridad nominadora sobre las funciones del cargo de carrera que ostenta Igartúa de la Rosa, adquirieron finalidad. Prudencialmente, los tribunales debemos abstenernos de considerar esta controversia específica.

Debe advertirse que no nos encontramos propiamente ante un incumplimiento con el requisito de agotar los remedios administrativos, como concluyó el Tribunal de Circuito de Apelaciones. Nos encontramos, más bien, ante la situación en que la determinación administrativa adquirió

---

(4) La resolución de la J.A.S.A.P. mediante la cual fue desestimada la acción administrativa comienza con la identificación de la controversia específica que fue presentada ante su consideración. Señala al respecto que "[e]l 28 de junio de 1993, la apelante radicó apelación ante esta Junta, en la que alega que fue despojada de sus funciones como Sub-directora de la Oficina Regional de Aguadilla". Apéndice de la Petición de *certiorari*, pág. F-148.

finalidad. Por ello, la controversia específica relacionada a si las funciones de subdirectora de la región son inherentes a las funciones del puesto de carrera de Igartúa de la Rosa no debe ser litigada en los tribunales en esta etapa de los procedimientos.

Sin embargo, prima facie la reclamación judicial no versa sobre esa controversia específica. Un examen de la demanda presentada en el foro de instancia advierte que Igartúa de la Rosa fundamenta su reclamación en que se violaron sus derechos civiles. Invoca para ello la Ley de Derechos Civiles de Puerto Rico, 1 L.P.R.A. secs. 13–19, y la Ley federal de Derechos Civiles, 42 U.S.C. sec. 1983, además de las disposiciones de la Ley de Personal del Servicio Público de Puerto Rico, la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico y la Primera, Quinta y Decimocuarta Enmiendas de la Constitución de Estados Unidos. En su demanda, además, alega haber sufrido persecución y humillaciones que le han generado daños, por los cuales reclama la indemnización.

En esencia, alega que "ha sido hostigada, humillada y desposeída en forma continua de sus funciones, por razón de su afiliación al Partido Popular Democrático". Demanda enmendada, pág. 4, y Apéndice de la Petición de *certiorari*, pág. I-175. Por ello, afirma que las actuaciones de la A.D.T. configuran una situación de "persecución, discrimen y hostigamiento" en su contra, ya que fue privada de sus funciones, las cuales, afirma, fueron asignadas a otros empleados.

Además, en febrero de 1995, Igartúa de la Rosa enmendó su demanda para incluir reclamaciones en concepto de otros eventos ocurridos en su centro de trabajo. Petición de *certiorari*, Anejo I, pág. 172. Al respecto, indicó que ciertas actuaciones de la A.D.T. posteriores a julio de 1994, con relación a los procedimientos seguidos para cubrir los puestos creados como parte de la reestructuración de esa

agencia, han sido discriminatorios.([5]) Asimismo, cataloga como discriminatoria la determinación de 5 de enero de 1995 de reducirle su jornada de trabajo a 3:45 horas diarias.([6])

Sus alegaciones presentan controversias distintas a la controversia llevada ante la J.A.S.A.P. y que adquirió finalidad al no ser objeto de un oportuno recurso de revisión judicial. Es decir, no está ante los tribunales si las funciones de Subdirectora Regional son inherentes al puesto de carrera de Oficial Ejecutivo III. La controversia ante los

---

([5]) En su demanda enmendada, Igartúa de la Rosa indicó al respecto, lo siguiente:

"20. Que la parte co-demandada, Administración del Derecho al Trabajo[,] en cumplimiento [de] la reorganización gubernamental, ha venido realizando acciones para reducir el número de empleados de su propia agencia.

"21. Que entre las acciones administrativas que realizan las partes demandadas se encuentran ... 'traslados' y/o 'destaques' de sus empleados a otras agencias o dependencias del gobierno.

"22. Que las partes demandadas están obligadas a seguir la Orden Ejecutiva emitida por el honorable Pedro Rosselló, Gobernador del Estado Libre Asociado de Puerto Rico, el 30 de septiembre de 1993, [en] la cual se adoptan las medidas para establecer procedimientos a fin de proveer oportunidades de empleo a los funcionarios públicos afectados por la reorganización gubernamental, a través del Boletín Administrativo Núm. OE-1993-45.

. . . . . . .

"26. Que las actuaciones de las partes demandadas, en relación a la ejecución de la referida orden administrativa con la parte co-demandante, Conchita Igartúa de la Rosa, ha sido una discriminatoria y contraria a los propios procedimientos establecidos.

"27. Que las partes demandadas se encuentran realizando 'traslados' y 'destaques' de sus empleados; pero dichas acciones administrativas se limitan básicamente a empleados que militan en el partido actual de gobierno." (Énfasis suprimido.) Apéndice, págs. 177–178.

([6]) Señala la demanda enmendada sobre este aspecto, lo siguiente:

"34. Que con fecha del 5 de enero de 1995, la co-demandante, Conchita Igartúa de la Rosa, recibió comunicación escrita del codemandado, Juan A. Martínez, donde le informa que por insuficiencia de fondos y trabajo, la jornada de trabajo u horario queda reducido a medio tiempo, o sea, [a] 3:45 horas.

"35. Que la acción anunciada por las partes demandadas no se justifica ... en lo absoluto, ya que los demandados han reclutado [personal] por el Programa de Ocupaciones Diversas que desplaza ... a los empleados regulares en sus funciones, y éstos no se ven afectados en su jornada de trabajo.

"36 Que además, que la llamada austeridad es una creada por ellos mismos, para discriminar con los empleados regulares no identificados con el partido de Gobierno, pues existen otras medidas para economizar que no son utilizadas." (Énfasis suprimido.) Apéndice, pág. 179.

tribunales es si la demandada A.D.T. ha violado los derechos civiles de Igartúa de la Rosa.

■ Además, en su demanda, Igartúa de la Rosa reclama ser indemnizada por los daños que alega haber sufrido. Sobre este aspecto, son los tribunales los que deben determinar si es acreedora a la indemnización solicitada, pues la J.A.S.A.P. no está facultada en su ley habilitadora a conceder indemnización por daños. Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1394.

En este contexto, al dilucidar si la serie de eventos señalados por Igartúa de la Rosa violaron sus derechos civiles, el tribunal de instancia no puede pasar juicio sobre las funciones contenidas en el formulario Núm. OCAP-16 de la querellante. Esas son las funciones y tareas que la entidad con la pericia administrativa en asuntos de personal determinó que debían ser ejercidas por Igartúa de la Rosa y que no fueron cuestionadas oportunamente en los tribunales. Así, la finalidad de esa determinación no puede ser alterada en esta etapa de los procedimientos.

Resolvemos, por lo tanto, que erró el Tribunal de Circuito de Apelaciones en su determinación de la fecha exacta del inicio del término prescriptivo que tenía la peticionaria para iniciar la presente reclamación. De igual forma, resolvemos que erró al concluir que la reclamación judicial debía ser desestimada por no haber agotado los remedios administrativos correspondientes. En consecuencia, procede que devolvamos el caso al foro de instancia para que, a tenor con nuestros pronunciamientos, determine si proceden las causas de acción que Igartúa de la Rosa señala en su demanda, tanto en la originalmente presentada como en las incorporadas mediante enmienda. Sin embargo, al hacer esta evaluación el foro de instancia no podrá pasar juicio sobre la controversia específica que fue presentada ante la J.A.S.A.P. y que ya advino final y firme. Además, en cuanto a las reclamaciones relacionadas a las

alegaciones incluidas mediante enmienda a la demanda original, el tribunal de instancia deberá examinar si su adjudicación no requiere la previa intervención de la J.A.S.A.P.

*Se emitirá la correspondiente sentencia revocatoria.*

El Juez Asociado Señor Negrón García concurrió sin opinión escrita. El Juez Asociado Señor Corrada Del Río hizo constar que "disiente por entender que la sentencia emitida por el Tribunal de Circuito de Apelaciones en el caso de autos el 9 de noviembre de 1995 es sustancialmente correcta y debe ser confirmada". El Juez Asociado Señor Fuster Berlingeri no intervino.