Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| JOSUÉ ORTIZ COLÓN Y OTROS<br><br>Recurrido<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | TA2026RA00055 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Corrección y Rehabilitación<br><br>Sobre:<br>Regla 9 (Reglamento 9221) de 8 de octubre de 2020<br>Violación al debido proceso de ley |
|---|---|---|

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

## SENTENCIA

En San Juan, Puerto Rico, a 13 de febrero de 2026.

Comparecen ante nos, por derecho propio y en *forma pauperis*, Josué Ortiz Colón y otros, mediante el recurso de epígrafe, en el que nos solicitan que revisemos una determinación de la Oficina del Superintendente del Departamento de Corrección y Rehabilitación. Mediante el referido dictamen, la agencia recurrida le suspendió varios privilegios a la parte recurrente, en calidad de medida de seguridad.

Por los fundamentos que expondremos a continuación, se desestima el recurso de epígrafe por falta de jurisdicción, debido a que el dictamen administrativo recurrido no es revisable ante este Foro. Veamos.

## I

El 14 de enero de 2026, la Oficina del Superintendente del Departamento de Corrección y Rehabilitación (Departamento de Corrección) llevó a cabo en horas de la mañana un Registro General en el interior del Módulo 8-A-I de la Institución Correccional Guerrero, en Aguadilla, donde se encuentran confinados Josué Ortiz

Colón y los demás recurrentes que endosaron el recurso (en conjunto, parte recurrente). Como resultado, la agencia recurrida ocupó una serie de artículos de contrabando ilegal, entre los que se destacan: Fentanilo, picadura de marihuana, cocaína, teléfonos celulares, cargadores de celular, un objeto punzante, pedazos de lija de construcción, entre otros.

Como resultado del mencionado incidente, el 15 de enero de 2026, la Oficina del Superintendente notificó que a todos los confinados del Módulo 8-A-I les serían suspendidos los privilegios siguientes, en calidad de medida de seguridad: Visita, Televisor, Recreación Activa, Participación de Actividades Especiales, Paquetes, Correspondencia (solo correspondencia legal) y Comisaría (solo se le venderían artículos de higiene personal). En la notificación del 15 de enero de 2026, se hizo constar que la mencionada suspensión de privilegios se tomaba como una *medida de seguridad*, que se extendería hasta el 24 de enero de 2026.

Según expresado por la agencia recurrida en la referida notificación, esta medida de seguridad fue impuesta de conformidad con la Regla 9 del Reglamento Núm. 9221 de 8 de octubre de 2020, conocido como *Reglamento para establecer el proceso disciplinario de la población correccional*. Asimismo, el Departamento de Corrección consignó su intención de solicitarle a un Oficial Examinador la extensión de la referida medida impuesta, de conformidad con el procedimiento contemplado en la Regla 9 del Reglamento Núm. 9221.

Así las cosas, el 22 de enero de 2026, un Oficial Examinador de la División Legal de Disciplina de Confinados determinó que procedía aplicar una extensión de la referida medida de seguridad, por un período de treinta y cinco (35) días adicionales; entiéndase, del 25 de enero al 28 de febrero de 2026. La agencia recurrida detalló nuevamente que había dispuesto extender la suspensión de

privilegios como una *medida de seguridad*. Así, el 23 de enero de 2026, el Departamento de Corrección le notificó a la población correccional la decisión de extender esta medida al Módulo 8-A-I durante el período dispuesto.

En desacuerdo, el 9 de febrero de 2026, la parte recurrente - compuesta por Josué Ortiz Colón y un grupo de confinados del Módulo 8-A-I- compareció ante este Foro mediante el recurso de epígrafe, el cual tituló *Petición de Auxilio de Jurisdicción*. Esencialmente, en el recurso de epígrafe, la parte recurrente formuló una serie de señalamientos relacionados a la forma en que se llevó a cabo el operativo realizado el 14 de enero de 2026, el cual resultó en la aplicación de la medida de seguridad impugnada. De este modo, nos solicitó expedir una orden de auxilio de jurisdicción para paralizar inmediatamente la ejecución de la extensión de la medida, así como que le ordenemos al Departamento de Corrección la desestimación y archivo de las "faltas disciplinarias", por considerar que son nulas.

Así, con el propósito de lograr el más justo y eficiente despacho del asunto ante nuestra consideración,[1] procedemos a disponer del recurso del epígrafe.

## II

### A

La jurisdicción es el poder o autoridad que posee un tribunal para considerar y decidir un caso o controversia. *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. ELA*, 211 DPR 521, 529 (2023); *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135, 144 (2023); *Cobra Acquisitions, LLC. v. Municipio de*

---

[1] Véase la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7(B)(5), la cual dispone lo siguiente: "El Tribunal de Apelaciones tendrá facultad para prescindir de términos no jurisdicciones, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho, y proveer el más amplio acceso al tribunal, de forma que no se impida impartir justicia apelativa a la ciudadanía".

*Yabucoa* 210 DPR 384, 394 (2022). Nuestro Tribunal Supremo ha reiterado que los tribunales debemos ser fieles guardianes de nuestra jurisdicción y en que no tenemos discreción para asumir jurisdicción allí donde no la hay. Es decir, la jurisdicción incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Management Group, Inc. v. Oriental Bank,* 204 DPR 374, 386 (2020); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007). En consecuencia, les corresponde a los foros adjudicativos examinar su propia jurisdicción. *S.L.G. Szendrey-Ramos v. F. Castillo.,* supra, pág. 883.

La falta de jurisdicción tiene las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede este arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio. S.L.G. Solá-Moreno v. Bengoa Becerra,* 182 DPR 675, 682 (2011). Por tanto, cuando este Foro carece de jurisdicción, "procede la inmediata desestimación del recurso apelativo […]". *S.L.G. Szendrey-Ramos v. F. Castillo,* supra, pág. 883.

**B**

El Artículo 4.006 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003, 4 LPRA sec. 24y(c), solo autoriza al Tribunal de Apelaciones a revisar las órdenes o resoluciones finales emitidas por organismos o agencias administrativas. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113 (2023). De este modo, una orden o resolución se considera final cuando ha sido emitida por la última autoridad

decisoria o adjudicativa del ente administrativo y pone fin a la controversia ante la agencia, sin dejar asunto pendiente alguno. *Bird Const. Corp. v. AEE,* 152 DPR 928, 935-936 (2000); *J. Exam. de Tec. Med. v. Elías et al.*, 144 DPR 483, 490 (1997). Así, pues, el sistema propende a agotar, en primera instancia, los remedios provistos a nivel administrativo, antes de que proceda la intervención del foro judicial para revisar las determinaciones de las agencias.

Cónsono con lo anterior, la Sección 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672, dispone que:

> **Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones**, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 9655 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. […]. (Énfasis nuestro).

Asimismo, la doctrina de agotamiento de remedios administrativos está recogida en la citada sección. Dicha doctrina constituye, junto a la de jurisdicción primaria,[2] una norma de abstención judicial que pretende lograr que las reclamaciones sometidas inicialmente a la esfera administrativa lleguen al foro judicial en el momento adecuado. *Igartúa de la Rosa, et als. v. A.D.T.,* 147 DPR 318, 331 (1998). Su objetivo principal es evitar una intervención judicial innecesaria y a destiempo que tienda a interferir con el cauce y desenlace normal del procedimiento

---

[2] Sobre la doctrina de jurisdicción primaria, el Tribunal Supremo dispone que esta se utiliza para determinar qué foro tiene jurisdicción original para dilucidar una controversia, si el judicial o el administrativo, en aquellos casos en que haya incertidumbre al respecto, de acuerdo con las funciones gubernamentales que la Asamblea Legislativa les delega a algunas agencias administrativas. Véase, *Rodríguez Rivera v. De León Otaño,* 191 DPR 700, 709 (2014).

administrativo. *Delgado Rodríguez v. Nazario de Ferrer*, 121 DPR 347, 355 (1988).

Así, pues, la doctrina de agotamiento de remedios administrativos constituye un requisito jurisdiccional que no debe ser soslayado, a menos que se configure alguna de las limitadas excepciones que, al amparo de nuestro ordenamiento jurídico, justifican el trámite administrativo. *Igartúa de la Rosa v. A.D.T.*, supra, pág. 331. A tenor con ello, la Sección 4.3 de la LPAU dispone las excepciones a la referida doctrina:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.

3 LPRA sec. 9673.

### C

La Regla 9 del Reglamento Núm. 9221 de 8 de octubre de 2020, conocido como *Reglamento para establecer el proceso disciplinario de la población correccional*, permite al Departamento de Corrección y Rehabilitación suspenderle privilegios a los confinados como una **medida de seguridad**, y no como una **medida disciplinaria**. La referida disposición establece lo siguiente:

### SUSPENSIÓN DE PRIVILEGIOS POR MEDIDA DE SEGURIDAD

1. El Superintendente de la institución correccional podrá suspender los privilegios, sin celebración de vista administrativa, por un periodo de tiempo que no exceda a diez (10) días calendarios, en aquellas circunstancias que atenten contra la seguridad institucional. El Superintendente no podrá extender el término expresamente dispuesto en este inciso. Bajo ninguna circunstancia, esta disposición podrá ser utilizada por el Superintendente de la institución correccional como medida disciplinaria.

2. Queda prohibida la cancelación del privilegio de visita a un grupo, unidad de vivienda, edificio o institución como medida disciplinaria. Sin embargo, esto no impedirá la suspensión de este privilegio cuando existan otras razones que no sean de índole disciplinario que así lo requieran y que estén en total acorde con las circunstancias específicamente establecidas para afianzar la seguridad. En estos casos, deberá entenderse que la suspensión de privilegios responde estrictamente a una medida de seguridad y no a una medida disciplinaria.

3. El Superintendente deberá notificar por escrito a la Oficina de Asuntos Legales la acción tomada dentro del próximo día laborable de haber tomado la acción. El Director de la Oficina de Asuntos Legales o su representante, referirá el asunto a la Oficina de Investigaciones del Sistema Correccional (OISC). La investigación será conducida por la Oficina de Investigaciones del Sistema de Correccional (OISC), con el propósito de determinar si existe justa causa para extender la suspensión de privilegios por razones de seguridad. Los privilegios podrán ser suspendidos por razones de seguridad, bajo una de las siguientes circunstancias:

a. En casos de motín, fuga, disturbio, su tentativa o cualquier otra actividad o evento que ponga en riesgo la seguridad, la tranquilidad o el funcionamiento institucional. Esto incluye, pero sin limitarse a, cualquier amenaza contra la integridad física o la propiedad de un miembro de la población correccional, o cualquier otra persona, o contra la seguridad de la institución correccional.

b. Cuando ocurra una agresión a un miembro de la población correccional y la misma sea ejecutada por seis (6) o más miembros de la población correccional.

c. Cuando un módulo o unidad de vivienda de la institución correccional se niegue o se resista a someterse a las pruebas de detección de sustancias controladas, alcohol o cualquier otra prueba que se utilice para estos propósitos o impida que pueda llevarse a cabo dicha prueba.

d. Cuando ocurran hallazgos de cualquier contrabando peligroso, tal como armas de fuego, sustancias controladas, artefactos explosivos o cualquier otro material prohibido por ley o reglamento.

4. La Oficina de Disciplina de Confinados calendarizará una vista administrativa que será presidida por un Oficial Examinador con el propósito de determinar la existencia de justa causa para extender la aplicación de la medida de seguridad, así como la cantidad de días por lo que se extenderá la misma. Dicha vista será celebrada antes del cumplimiento de los diez (10) días calendarios de tomada la acción o medida de seguridad. De lograrse el cese de la circunstancia que originó que se afectará la seguridad institucional

antes de cumplirse el máximo de diez (10) días autorizados para la aplicación, el superintendente, deberá de inmediato dejar sin efecto la medida impuesta, notificando su acción a la Oficina de Disciplina de Confinados.

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

**III**

Tras evaluar el recurso de epígrafe, concluimos que carecemos de jurisdicción para pasar juicio sobre la corrección de la suspensión de privilegios impuesta a la parte recurrente en calidad de medida de seguridad, como esta nos solicita. Ello, en la medida que no se trata de un dictamen que sea producto de un proceso disciplinario contra un miembro de la población correccional, ni tampoco de la adjudicación de una solicitud de remedio administrativo interpuesta, de conformidad con el Reglamento Núm. 8583 de 4 de mayo de 2015, conocido como *Reglamento para atender las solicitudes de remedios administrativos radicadas por los miembros de la población correccional.*

En particular, nótese que el dictamen cuya revisión se solicita tampoco es el resultado de algún proceso en el que se adjudiquen los derechos u obligaciones de la parte recurrente. Por el contrario, una medida tomada bajo la Regla 9 del Reglamento Núm. 9221, por su naturaleza, es administrativa, y no cuasi-judicial. Es decir, que consta de una medida profiláctica de seguridad que no requiere adjudicar la responsabilidad individual de confinado alguno.

Según la Regla VI(1)(a) del Reglamento Núm. 8583, la División de Remedios Administrativos (DRA) es el ente administrativo con jurisdicción para atender solicitudes de remedio administrativo que versen sobre "[a]ctos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional". Una vez iniciado un procedimiento de *Solicitud de Remedio Administrativo*

ante la DRA, la sección XIV(4) del Reglamento Núm. 8583 dispone que un Coordinador cuenta con quince (15) días, contados a partir de la fecha de presentación de una solicitud de reconsideración oportuna, para informarle al miembro de la población correccional si la acoge. Una vez el Coordinador notifica su determinación de acoger la solicitud de reconsideración, la Regla XIV(4) dispone que cuenta con un término de treinta (30) días laborables para emitir una *Resolución en Reconsideración*. Así las cosas, si el referido dictamen le resulta adverso al miembro de la población correccional, *entonces* puede recurrir de este ante este foro apelativo intermedio mediante un recurso de revisión judicial. Véase, Regla XV del Reglamento Núm. 8583.

En virtud de todo lo anterior, no albergamos duda respecto a que la DRA es el ente administrativo con jurisdicción primaria para dilucidar la corrección de la actuación impugnada por la parte recurrente. De forma cónsona, y de conformidad con la doctrina de agotamiento de remedios administrativos, estamos impedidos de pasar juicio sobre la corrección de la suspensión de privilegios impuesta a la parte recurrente en calidad de medida de seguridad. Consecuentemente, es forzoso concluir que carecemos de jurisdicción para dilucidar el recurso de epígrafe en los méritos, por lo que procede su desestimación.

**IV**

Por los fundamentos que anteceden, se desestima el recurso de epígrafe por falta de jurisdicción, debido a que el dictamen administrativo recurrido no es revisable ante este Foro.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El juez Salgado Schwarz concurre con la siguiente expresión:

"Estoy de acuerdo con la decisión a la que llegamos en el panel, sin embargo, entiendo que nos quedamos cortos en la

disposición del mismo, ya que en adición, revocaría la determinación erróneamente recurrida y le daría instrucciones a la agencia administrativa sobre la notificación adecuada de la resolución.

Al momento en que el Departamento de Corrección procede a solicitar una extensión del periodo de la medida de seguridad impuesta ante un Oficial Examinador, están trasladando la susodicha medida de seguridad en un asunto cuasi-judicial, y por ende, revisable de alguna forma. Si el remedio depende del agotamiento de remedios administrativos, se le tiene que notificar a las partes afectadas por la medida, en este caso los confinados, cuál es el proceso y el término para acceder a dichos remedios de revisión interna, para poder agotar los mismos.

Esto es lo mínimo que se le debe garantizar a estos recurrentes."


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones