Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| POBLACIÓN CORRECCIONAL EDIFICIO 1 SECCIÓN D, INST. BAYAMÓN 501 Heriberto Nieves Domínguez, Guillermo Massa Ferrer, Omar Morales Velázquez, José Camacho, José E. Correa Rosa, Rolando Ferrao Rivera, Francisco Salas Hernández, Celso Romero Figueroa, David Suárez Román, Santos González García, Roberto Quiñones López, Christian Andújar Nieves, Bryan López Echevarría, Louis W. Danet Mendrell, Héctor Cartagena Hernández, Orlando González Burgos, Joel Figueroa Quidley, Rubén Peruchet Lebrón, Eduardo Vargas Maldonado, Jesús A. De León Tricoche, Luis M. Franco Matos, Wilfredo Rodríguez, José Montañez Román, Luis Rodríguez Alicea, José A. Santos Delgado, Jorge López Rivera, Víctor Miranda Santana, Eliezer Gibson Díaz, Freddy Javier Morales, Jorge Meléndez Padilla, Ángel L. Sánchez, Ángel M. Rivera Cruz, Kevin Acevedo Casado, Luis E. Collazo Torres, Neftalí Pizarro Pizarro, Edgardo Morales Robles, Jean Caldero Pizarro, Ricardo Laureano Bermúdez, Carlos Figueroa Torres, Wilfredo Heria Ortega, Nelson Pérez Correa, Waldemar Torres Mercado<br><br>APELANTES<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN; INST. 501; Víctor Maldonado | KLAN202400795 | *Apelación,* Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2024CV03992<br><br>Sobre: VIOLACIÓN DE DERECHOS CONSTITUCIONA-LES REGLA 9 |

Número Identificador

SEN2024_____

| Vázquez, Superintendente; Andrés Martínez, Oficial Examinador División Legal; Teniente Loubriel; Mariela Huertas Monserrate, Comandante; Ana I. Escobar Pabón, Secretaria Departamento de Corrección y Rehabilitación  APELADOS | | |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de octubre de 2024.

Comparece el Sr. Heriberto Nieves Domínguez, *et als.* (en adelante, apelantes) mediante *Escrito en Solicitud de Apelación Certiorari* y nos solicitan la revisión de la *Sentencia* dictada el 10 de julio de 2024 y notificada el 12 de julio de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("TPI"). Mediante este dictamen, el TPI desestimó la acción presentada por los apelantes en contra del Departamento de Corrección y Rehabilitación ("DCR") por falta de jurisdicción al no haberse agotado todos los remedios provistos por la agencia previo a acudir al foro judicial.[1]

Por los fundamentos que expondremos, se confirma la *Sentencia* apelada.

**I**

El 9 de julio de 2024, los apelantes, miembros de la Población Correccional Edificio I Sección D de la Institución Correccional Bayamón 501, presentaron ante el TPI una *Moción en Auxilio de Injunction Preliminar* sobre violación de derechos constitucionales en contra del DCR.[2] Mediante esta acción, los apelantes impugnaron la

---

[1] Se le autoriza a la parte demandante a presentar su recurso de forma pauperis y se le exime del pago de aranceles toda vez que son personas indigentes.
[2] Véase, Anejo 1 del recurso de *Apelación*.

*Medida De Seguridad Perdida De Privilegios* emitida el 17 de junio de 2024 por el Superintendente Sr. Víctor Maldonado Vázquez y la Comandante Sra. Mariela Huertas Monserrate de la Institución Correccional Bayamón 501 suspendiendo ciertos privilegios[3] a los miembros de la Población Correccional Edificio I Sección D por un periodo de diez (10) días calendarios al amparo de la Regla 9 del Reglamento para Establecer el Procedimiento Disciplinario de la Población Correccional, Reglamento Núm. 9221, Departamento de Estado, 8 de octubre de 2020. Además, los apelantes impugnaron la *Extensión Regla 9 Suspensión de Privilegios por Medidas de Seguridad* emitida el 24 de junio de 2024 extendiendo la suspensión de los privilegios por un periodo de sesenta (60) días.[4] En síntesis, los apelantes alegaron que las medidas en cuestión se impusieron de forma ilegal y en violación al debido proceso de ley, por lo que le solicitaron al TPI la expedición de una orden de entredicho provisional contra el DCR para que dicha agencia cesara y desistiera de la aplicación de la Regla 9 del Reglamento Núm. 9221, *supra.*

Al día siguiente, 10 de julio de 2024, notificada el 12 de julio de 2024, el TPI emitió la *Sentencia* aquí apelada, mediante la cual desestimó la acción presentada por los apelantes en contra del DCR por falta de jurisdicción al concluir que no se habían agotado todos los remedios administrativos provistos por la agencia previo a acudir al foro judicial.[5] En su dictamen, el TPI concluyó que la reclamación de los apelantes debió presentarse ante la División de Remedios Administrativos del DCR.

El 30 de julio de 2024, los apelantes presentaron una *Moción de Reconsideración.*[6] Por una parte, los apelantes informaron que habían presentado un recurso de solicitud de remedio (Núm. B-963-

---

[3] Véase, Anejo 5 del recurso de *Apelación.*
[4] Véase, Anejo 1 del recurso de *Apelación.*
[5] Véase, Anejo 6 del recurso de *Apelación.*
[6] Véase, entrada Núm. 4 del expediente digital del Caso Núm. BY2024CV03992 en el Sistema Unificado de Manejo y Administración de Casos ("SUMAC").

24) ante la agencia. No obstante, alegaron que debían ser relevados de tener que agotar los remedios administrativos ante la agencia por razón de que el requerir su agotamiento resultaría en un daño irreparable; sería inútil agotarlos por la dilación excesiva en los procedimientos; era un caso claro de falta de jurisdicción de la agencia, y se estaba alegando la violación sustancial de derechos constitucionales. Por otra parte, alegaron que la agencia no estaba facultada para conceder una indemnización por daños y perjuicios, por lo que podían acudir directamente ante el foro judicial con su acción. Además, reiteraron que la notificación de la implementación de las medidas no fue adecuada al no incluir las advertencias sobre derecho, proceso y los términos para presentar un recurso de solicitud de remedio ante la División de Remedios Administrativos contra dicha determinación.

El 5 de agosto de 2024, notificada el 6 de agosto de 2024, el TPI emitió *Resolución* declarando No Ha Lugar la moción de reconsideración presentada por las apelantes.[7]

En desacuerdo con la determinación del TPI, los apelantes acudieron ante nos el 27 de agosto de 2024 mediante el presente recurso de apelación. En este, señalan la comisión por el TPI de los errores siguientes:

> Erró el Tribunal de Primera Instancia al determinar que no tenía jurisdicción para atender el recurso incoado por la parte recurrente aduciendo que no se agotaron los remedios administrativos.
>
> Erró el Tribunal de Primera Instancia al denegar la Solicitud de Reconsideración habiendo aclarado en la misma que se puede preterir el proceso administrativo cuando se reclaman daños y perjuicios y la agencia no tiene facultad para concederlos.

El 3 de agosto de 2024, emitimos *Resolución* concediéndole un término de veinte (20) días a la parte apelada para expresarse con

---

[7] Véase, Anejo 4 del recurso de *Apelación*.

respecto al recurso. El 30 de septiembre de 2024, el DCR, representado por la Oficina del Procurador General, presentó su *Comparecencia Especial y Solicitud de Desestimación* mediante la cual arguyó que procedía la desestimación del recurso toda vez que, estos no habían sido emplazados por lo que este tribunal no tenía jurisdicción sobre la persona del Estado y que los apelantes no habían cumplido con las siguientes disposiciones reglamentarias para el perfeccionamiento del recurso: (1) notificación al foro apelado de la portada sellada, dentro de las setenta y dos (72) horas siguientes a la presentación del recurso, (2) no certificaron la notificación del recurso a las partes, (3) la omisión de portada e índices en su recurso y (4) el pago del arancel correspondiente.

Así, contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

## A.

La Sección 4.2 de la Ley Núm. 38-2017, según enmendada, *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"*, 3 LPRA sec. 9672, dispone lo siguiente:

> "Una parte adversamente afectada por una orden o resolución final de una agencia **y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente** podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración." (énfasis suplido).

La doctrina de agotamiento de remedios administrativos es una norma de autolimitación judicial que pretende lograr que las reclamaciones sometidas inicialmente a la esfera administrativa lleguen al foro judicial en el momento apropiado. *Colón Rivera et al.*

*v. ELA*, 189 DPR 1033, 1057 (2013); *Procuradora Paciente v. MCS*, 163 DPR 21 (2004); *Asoc. Pesc. Pta. Figueras. v. Pto del Rey*, 155 DPR 906 (2001). Su propósito principal es evitar una intervención judicial innecesaria y a destiempo que tienda a interferir con el cauce y desenlace normal del procedimiento administrativo. *Procuradora Paciente v. MCS*, supra; *Mun. de Caguas v. AT&T*, 154 DPR 401, (2001); *Igartúa de la Rosa v. A.D.T.*, 147 DPR 318 (1998). De esta forma, la agencia administrativa puede: (1) desarrollar un historial completo del asunto; (2) utilizar el conocimiento especializado o *expertise* de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad; y (3) aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos. *AAA v. UIA*, 200 DPR 903 (2018); *Procuradora Paciente v. MCS*, supra.

Esta doctrina aplica a aquellos casos en los cuales una parte que instó o tiene instada una acción ante una agencia administrativa, acude luego a un tribunal sin antes haber completado todo el trámite administrativo. Véase, *AAA v. UIA*, supra; *Colón Rivera v. ELA*, supra; *Mun. de Caguas v. AT & T*, supra. Es decir, "[e]l agotamiento de remedios presupone la existencia de un procedimiento administrativo que comenzó, o que debió haber comenzado, pero que no finalizó porque la parte concernida recurrió al foro judicial antes de que se completase el referido procedimiento administrativo". J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, 4ta ed. rev., San Juan, Ed. SITUM, 2017, pág. 71.

La doctrina de agotamiento de remedios administrativos no debe ser soslayada, a menos que se configure alguna de las limitadas excepciones que bajo nuestro ordenamiento jurídico justifican preterir el trámite administrativo. Véase, *ORIL v. El Farmer, Inc.*, 204 DPR 229 (2020); *Igartúa de la Rosa v. A.D.T.*,

supra. Así, la Sección 4.3 de la Ley Núm. 38-2017, *supra,* dispone que:

> "El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa."

El Tribunal Supremo ha resuelto que le corresponde a la parte que acude ante nos probar con hechos específicos y bien definidos la necesidad de obviar el cauce administrativo. *Procuradora Paciente v. MCS,* supra. No debemos olvidar que cuando "el agravio sea uno de 'patente intensidad al derecho del individuo que reclame urgente reparación', se puede utilizar el *injunction* para eludir el cauce administrativo". *S.L.G. Flores-Jiménez v. Colberg,* 173 DPR 843 (2008).

**B.**

La jurisdicción ha sido definida por el Tribunal Supremo como "el poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias." *Municipio de Aguada v. W. Construction, LLC y otro,* 2024 TSPR 69; *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384 (2022). En múltiples ocasiones, dicho foro ha expresado que "los tribunales debemos ser celosos guardianes de nuestra jurisdicción, por lo que los asuntos relacionados con esta son privilegiados y deben atenderse con prioridad." *Íd.*

En lo referente al asunto ante nuestra consideración, el Tribunal Supremo ha sentenciado que "en el ámbito administrativo, al igual que en el foro judicial, no existe discreción para asumir jurisdicción donde no la hay." *Muñoz Barrientos v. ELA et al.,* 212

DPR 714 (2023), (citando a *Raimundi v. Productora,* 162 DPR 215 (2004)). "Las agencias administrativas solamente pueden ejercer los poderes que su ley habilitadora expresamente les ha otorgado y lo que sean indispensables para llevar a cabo su encomienda primordial." *Íd.*, (citando a *Col. Médicos et als. v. Com. Seguros et al.,* 201 DPR 362 (2018)). Por lo tanto, para determinar si una agencia administrativa tiene jurisdicción sobre una controversia en particular, es necesario analizar los poderes conferidos por su ley habilitadora, así como aquellos que resultan indispensables para el cumplimiento de sus funciones y deberes.

Ahora bien, en situaciones en las que la agencia administrativa no está facultada en ley para conceder determinado remedio, la parte perjudicada puede acudir directamente ante el foro judicial. *Igartúa de la Rosa v. A.D.T.,* supra, págs. 332-333, (citando a *Cintrón v. E.L.A.,* 127 DPR 582 (1990).

Recientemente, y en lo pertinente a la controversia ante nuestra consideración, en *Muñoz Barrientos v. ELA et al.*, supra, págs. 725-726, el Tribunal Supremo reiteró lo siguiente:

> "[S]i el reclamo que tiene una parte en determinado litigio es uno en daños y perjuicios, y la ley orgánica de la agencia no provee para el resarcimiento de estos, resultaría innecesario "agotar ciertos remedios que en realidad no coinciden con los que [la parte] realmente pretende obtener ante el foro judicial". [...] Al respecto, debemos recordar que:
>
> [l]a presentación de una reclamación en daños en los tribunales no puede ser utilizado como un subterfugio para burlar la obligación de agotar los remedios administrativos o para restarle finalidad a una determinación administrativa cuando, inmersa en la reclamación judicial, subyacen controversias que requieren ser adjudicadas inicialmente por el foro administrativo. [...]
>
> En tales situaciones, "los tribunales deben abstenerse de adjudicar aquellas controversias incluidas en la reclamación judicial cuya adjudicación está reservada al foro administrativo, ya sea por tratarse de una materia de jurisdicción exclusiva de ese foro, o porque su resolución requiere una previa interpretación de la pericia administrativa, entre otras circunstancias. [...]

> Ahora bien, es norma firmemente establecida que "la procedencia de una acción en daños, que la agencia no puede adjudicar ni conceder, no requiere de la intervención o pericia por parte de la agencia concernida". [...] Por lo cual, en esas instancias la parte puede originar su causa de acción en daños ante los foros judiciales sin previo trámite administrativo, pues la agencia carece de jurisdicción para entender en el asunto. [...]."

En *Muñoz Barrientos v. ELA et al.*, supra, el Tribunal Supremo finalmente, luego de un análisis del expediente del caso ante su consideración, así como de las disposiciones legales y jurisprudenciales aplicables al Departamento de Corrección y Rehabilitación, resolvió que, toda vez que dicha agencia no estaba facultada en ley para conceder una indemnización por los daños y perjuicios sufridos por un miembro de la población correccional, este podría acudir directamente al foro judicial con su reclamación extracontractual.

## C.

Al amparo de la Ley Núm. 182-2009, según enmendada, *"Ley de Reorganización y Modernización de la Rama Ejecutiva del Gobierno de Puerto Rico de 2009"*, 3 LPRA ant. sec. 8821 *et seq.*, se aprobó el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, 3 LPRA, Ap. XVIII, con el fin de reorganizar el Departamento de Corrección y Rehabilitación. Mediante este Plan, se estableció como política pública del Estado Libre Asociado de Puerto Rico:

> "[L]a creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad." Artículo 2 del Plan de Reorganización Núm. 2, *supra.*

En cuanto a la creación del Departamento de Corrección y Rehabilitación, en el Artículo 4 del Plan de Reorganización Núm. 2, *supra*, estableció lo siguiente:

> "Se crea el Departamento de Corrección y Rehabilitación como el organismo en la Rama Ejecutiva responsable de implantar la política pública relacionada con el sistema correccional y de rehabilitación de adultos y menores, así como de la custodia de todos los ofensores y transgresores del sistema de justicia criminal del país."

En lo referente al asunto ante nuestra consideración, el Artículo 7 (aa) del Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, 3 LPRA Ap. XVIII,[8] establece que el Secretario del Departamento de Corrección y Rehabilitación tendrá entre sus funciones, facultades y deberes:

> "adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios".

En virtud de este Artículo, el Departamento de Corrección y Rehabilitación creó y aprobó el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583, Departamento de Estado, 4 de mayo de 2015. Este Reglamento establece un marco normativo para la presentación, evaluación y resolución ante la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación de las solicitudes de remedios administrativos por parte de los miembros de la población correccional relacionadas al confinamiento. La 'solicitud de remedio' es el "[r]ecurso que presenta un miembro de la población

---

[8] El Plan de Reorganización Núm. 2 se aprobó con el fin de reorganizar el Departamento de Corrección y Rehabilitación.

correccional por escrito, de una situación que afecte su calidad de vida y seguridad, relacionado con su confinamiento." Regla IV (24) del Reglamento Núm. 8583, *supra*.

En cuanto a la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación, el Reglamento Núm. 8583, *supra*, dispone que dicho organismo fue creado "para atender cualquier queja o agravio que pudieran tener los confinados en contra del Departamento de Corrección y Rehabilitación o sus funcionarios sobre cualquier asunto." Véase, Introducción del Reglamento Núm. 8583, *supra*. Entre estos asuntos, se incluyen: agresiones físicas, verbales y sexuales, propiedad de confinados, revisiones periódicas a la clasificación, traslados de emergencia, confinados a ser recluidos en el anexo de máxima seguridad, reclusión solitaria, plan de recreación, ejercicios y uso de biblioteca para fines recreativos, servicios médicos y servicios religiosos. *Íd.* Conforme al Reglamento, la División de Remedios Administrativos:

> "[E]s un organismo administrativo cuyo objetivo es que los confinados puedan presentar una "solicitud de remedio" en su lugar de origen; excepto que medie justa causa para no haberla radicado en su lugar de origen como:
> - actos e incidentes que afecten personalmente al confinado en su bienestar físico, mental, seguridad personal o en su plan institucional
> - minimizar las diferencias entre los confinados y el personal, para evitar o reducir la radicación de pleitos en los Tribunales
> - plantear asuntos de confinamientos al DCR; reducir tensiones y agresiones físicas y verbales que puedan resultar en reclamos no atendidos
> - recopilar información relacionada a los reclamos de los confinados que permitan evaluar éste y otros programas, o facilitar el proceso de rehabilitación del confinado." Véase, Introducción del Reglamento Núm. 8583, *supra*.

En cuanto a la jurisdicción de la División de Remedios Administrativos, la Regla VI del Reglamento Núm. 8583, *supra*, establece lo siguiente:

**"1. La División tendrá jurisdicción para atender toda Solicitud de Remedio radicada por los miembros de la población correccional en cualquier institución o facilidad correccional donde se encuentre extinguiendo sentencia y que esté, relacionada directa o indirectamente con:**

a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad o en su plan institucional.

b. Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento.

**c. Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad".**

d. Alegaciones de violencia sexual por parte de un miembro de la población correccional conforme "Prision Rape Elimination ACT" (PREA) (115.51a, d, 115.52-b1, b2, b3).

**2. La División no tendrá jurisdicción para atender las siguientes situaciones:**

a. Cuando no haya agotado el trámite administrativo concedido por otros reglamentos, excepto que la solicitud se refiera al incumplimiento del trámite correspondiente ante aquel organismo.

b. Solicitudes de Remedios suscritas por un miembro de la población correccional en representación de otros miembros de la población correccional en la misma solicitud. Excepto cuando se refiera a reportar confidencias de cualquier tipo de violencia sexual en el entorno correccional.

c. Cuando se trate de impugnar una orden o decisión de cualquier organismo administrativo del Estado Libre Asociado de Puerto Rico o de un Tribunal de Justicia.

d. Controversias relacionadas con las decisiones emitidas por la Junta de Libertad Bajo Palabra, excepto que la Solicitud de Remedios se refiera al incumplimiento del área concernida de rendir los informes o llevar a cabo unas acciones o incurrir en omisiones de obligaciones impuestas por el ordenamiento jurídico vigente.

e. Cuando se impugne una decisión emitida por algún comité conforme a los reglamentos aprobados, según dispone la Ley de Procedimiento Administrativo Uniforme, excepto que la Solicitud de Remedio se refiera al incumplimiento del trámite correspondiente impuesto por un tribunal.

f. Cuando se trate de reclamaciones por accidentes del trabajo o de vehículos de motor, las cuales serán manejadas según la Ley de la Corporación del Fondo del Seguro del Estado y la Ley de Administración de Compensaciones por Accidentes de Automóviles, excepto que la solicitud se refiera al incumplimiento por parte del Departamento de Corrección y Rehabilitación de llevar a los miembros de la población correccional a recibir los servicios iniciales o de seguimiento.

g. Cualquier otra situación que no cumpla con las disposiciones del presente Reglamento para la radicación de Solicitudes de Remedios." (énfasis suplido).

De lo anterior se desprende, que la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación, tienen jurisdicción sobre asuntos relacionados al bienestar, seguridad o plan institucional de los confinados, entre otros. *Muñoz Barrientos v. ELA et al.*, supra, pág. 730.

**D.**

La Constitución del Estado Libre Asociado de Puerto Rico, al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que: "ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley." Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. El debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. Al amparo del debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. *PVH Motor v. ASG,* 209 DPR 122 (2022); *Román Ortiz v. OGPe,* 203 DPR 947 (2020); *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 DPR 881 (1993); *Rodríguez Rodríguez v. E.L.A.,* 130 DPR 562 (1992); *Rivera Santiago v. Srio. de Hacienda,* 119 DPR 265 (1987). Por otro lado, en el debido proceso de ley

procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Román Ortiz v. OGPe*, supra; *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* supra; *López Vives v. Policía de P.R.*, 118 DPR 219 (1987).

Para que entre en vigor la protección que ofrece este derecho, en su vertiente procesal, tiene que estar en juego un interés individual de libertad o propiedad. *Board of Regents v. Roth*, 408 US 564 (1972). Una vez cumplida esta exigencia, hay que determinar cuál es el procedimiento exigido. *Rivera Santiago v. Srio. de Hacienda*, supra, pág. 274; *Morissey v. Brewer*, 408 US 471, 481 (1982). Dependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial. *Íd.*

La jurisprudencia ha establecido diversos requisitos que debe cumplir todo procedimiento adversativo, para satisfacer las exigencias del debido proceso, a saber: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado y (6) que la decisión se base en el expediente. *Román Ortiz v. OGPe*, supra; *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* supra.

En *PVH Motor v. ASG,* supra, págs. 131, el Tribunal Supremo señaló que:

> "[d]ado que las agencias administrativas ejercen una función adjudicativa, al interferir no solo con los intereses de libertad, sino también con la propiedad de los individuos, las garantías de un debido proceso de ley han sido extendidas a dichas agencias. [...] No obstante, los procedimientos en el ámbito administrativo no tienen la misma rigidez que los procedimientos adjudicativos ante los tribunales. [...] Por tanto, el procedimiento adjudicativo ante las agencias debe ceñirse a las garantías mínimas del debido proceso de ley. [...]" (citas omitidas).

De igual manera, estas salvaguardas constitucionales se reconocen en la Carta de Derechos de la Sección 3.1 de la Ley Núm. 38-2017, 3 LPRA 9601 *et. seq.* Específicamente, esta Sección dispone que, en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos: derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; derecho a presentar evidencia; derecho a una adjudicación imparcial; derecho a que la decisión sea basada en el expediente. *Id.*

El Tribunal Supremo ha sentenciado que "una notificación defectuosa de una determinación tomada por las agencias administrativas priva de jurisdicción al foro revisor para entender el asunto en disputa, lo que impide que comience a transcurrir el término para recurrir de cualquier determinación administrativa y, consecuentemente, violenta el derecho al debido proceso de ley de la parte afectada." *PVH Motor v. ASG*, supra, pág. 132; *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525 (2019); *Toro Alvarado v. Madera Atiles*, 202 DPR 495 (2019); *IM Winner, Inc. v. Mun. de Guayanilla*, 151 DPR 30 (2000).

**E.**

La doctrina jurídica de *justiciabilidad* se emplea para limitar la intervención de los tribunales a aquellos casos en que exista una controversia genuina surgida entre partes opuestas que tengan un interés real en obtener un remedio que afecte sus relaciones jurídicas. *Ramos, Méndez v. García García,* 203 DPR 379 (2019). No se consideran controversias justiciables aquellas en que: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta

promover un pleito que no está maduro. *Id.,* pág. 394.

La doctrina de *academicidad* es una manifestación del principio de *justiciabilidad. Amador Roberts et als. v. ELA,* 191 DPR 268 (2014). Un caso debe desestimarse por académico cuando se trata de obtener: (1) un fallo sobre una controversia disfrazada, que en realidad no existe; (2) una determinación de un derecho antes de que este haya sido reclamado, o (3) una sentencia sobre un asunto que, al dictarse, por alguna razón, no tendrá efectos prácticos sobre una controversia existente. *San Gerónimo Caribe Project v. A.R.Pe,* 174 DPR 640 (2008). "Una controversia inicialmente justiciable se torna académica cuando los cambios fácticos o judiciales acaecidos durante el trámite judicial de una controversia, tornan en académica o ficticia su solución". *Amador Roberts v. ELA,* supra, pág. 283, (citando a *Com. de la Mujer v. Srio. de Justicia,* 109 DPR 715 (1980)).

Un caso se torna académico cuando pierde su condición de controversia viva y presente, ya sea por el paso del tiempo y/o los eventos posteriores al mismo. *Emp. Pur. Des., Inc. v. H.I.E. Tel,* 150 DPR 924 (2000).

Los tribunales tienen el deber de desestimar un pleito académico porque carecen de discreción para negarse a ello. *E.L.A. v. Aguayo,* 80 DPR 552 (1958). Además, el "tribunal puede ordenar la desestimación inmediata del recurso si comprueba que no existe una controversia real entre los litigantes". *Íd.* En resumen, un caso debe desestimarse por académico cuando los hechos o el derecho aplicable han variado de tal forma que ya no existe una controversia vigente entre partes adversas. *PNP v. Carrasquillo,* 166 DPR 70, 75 (2005).

### III

En su recurso, los apelantes señalan que el Tribunal de Primera Instancia erró "al determinar que no tenía jurisdicción para atender el recurso incoado por la parte recurrente aduciendo que no

se agotaron los remedios administrativos" y "al denegar la Solicitud de Reconsideración habiendo aclarado en la misma que se puede preterir el proceso administrativo cuando se reclaman daños y perjuicios y la agencia no tiene facultad para concederlos."

Por una parte, los apelantes alegan que deben ser relevados de tener que agotar los remedios administrativos ante la agencia por razón de que el requerir su agotamiento resultaría en un daño irreparable; sería inútil agotarlos por la dilación excesiva en los procedimientos; es un caso claro de falta de jurisdicción de la agencia, y se está alegando la violación sustancial de derechos constitucionales. Por otra parte, alegan que la agencia no está facultada para conceder una indemnización por daños y perjuicios, por lo que podían acudir directamente ante el foro judicial con su acción.

Bajo cualquiera de los supuestos que expondremos a continuación, carecemos de jurisdicción para atender el presente recurso. Veamos.

Según reseñamos, en la demanda original presentada ante el TPI titulada *Moción en Auxilio de Injunction Preliminar*, los apelantes impugnaron las determinaciones del DCR de suspensión de privilegios y de extensión del periodo de suspensión. Como remedio, los apelantes únicamente solicitaron la expedición de una orden de entredicho provisional para que dicha agencia cesara y desistiera de la aplicación de la Regla 9 del Reglamento Núm. 9221, *supra*, la cual autoriza al Superintendente a suspender los privilegios de los confinados por medida de seguridad.

Luego de examinar el expediente de este caso, encontramos que no fue sino hasta la *Moción de Reconsideración* presentada el 30 de julio de 2024 solicitando la reconsideración de la *Sentencia* apelada, que los apelantes le plantearon al Tribunal de Primera Instancia que su acción iba dirigida a la compensación por alegados

daños y perjuicios sufridos como consecuencia de la implementación de la medida en cuestión, un remedio que el DCR como agencia administrativa no estaba facultado en ley para conceder.

En efecto, como vimos, en *Muñoz Barrientos v. ELA et al.*, supra, el Tribunal Supremo resolvió que el DCR no está facultado para conceder una indemnización por daños y perjuicios, por lo que una parte perjudicada puede acudir directamente ante el foro judicial con su acción. Sin embargo, entendemos que, no habiéndose instado esta acción inicialmente como una de daños y perjuicios, el Tribunal de Instancia estaba impedido, al evaluar la solicitud de reconsideración, de pasar juicio sobre cuestiones que no fueron presentadas oportunamente. De igual forma, en apelación debemos abstenernos de adjudicar cuestiones que no fueron planteadas ante el Tribunal de Instancia. Por tal razón, los planteamientos relacionados con la solicitud de daños y perjuicios no serán considerados al disponer del presente recurso.

Por otra parte, según expusimos, la Regla VI (1) (c) del Reglamento Núm. 8583, *supra,* expresamente establece que la División de Remedios Administrativos del DCR tiene jurisdicción para atender una solicitud presentada por un miembro de la población correccional relacionada a "cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad"". Existía, por tanto, tal y como resolvió el TPI, un procedimiento ante la División de Remedios Administrativos que los apelantes no agotaron que proveía remedios de los cuales estos podían servirse.

Aclaramos que, debido a que el periodo de implementación de la medida de suspensión de privilegios era hasta el 23 de agosto de 2024, la expedición de una orden de entredicho provisional no

tendría efectos prácticos. Por tal razón, a nuestro juicio, resulta académico determinar en apelación si los apelantes debieron ser relevados de agotar los remedios administrativos antes de acudir al foro judicial.

En virtud de lo expuesto anteriormente, concluimos que el TPI actuó correctamente al dictar su fallo desestimando la acción de los apelantes por falta de jurisdicción.

**IV**

Por los fundamentos expuestos, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones